# REPORTS OF CASES

DETERMINED IN THE

# SUPREME COURT,

## DECEMBER TERM, 1877.

THE BOARD OF CANAL AND LOCKS COMMIS-
SIONERS, RESPONDENTS, *v.* THE WILLAMETTE
TRANSPORTATION AND LOCKS COMPANY,
APPELLANTS.

REMEDY—ACT CREATING CANAL COMMISSIONERS—ENFORCED BY MANDAMUS.
—The writ of mandamus is the proper remedy to compel the owners of
steamboats and other water craft to furnish certified lists of the tons of
freight and number of passengers passed through the locks as prescribed
by section 12 of the act entitled "An Act to provide a Board of Canal
Commissioners," etc., approved October 19, 1876.

LEGISLATIVE AUTHORITY — REGULATION PRESCRIBED CONCERNING WATER
CRAFT.—The regulation provided by section 12 of the act creating canal
commissioners is a reasonable regulation imposed upon the owners of
steamboats and other water craft, in behalf of the public, and is within
the power of the legislature.

IDEM.—Appellant being an incorporated company, with the right of having
the power of eminent domain exercised in its behalf, and being the
owner of boats engaged in carrying freight and passengers for hire upon
the waters of a navigable river in which the public have a proprietary
interest, is subject to regulations by legislative authority, in behalf of
the public.

IDEM.—The fact that the appellants own the canal and locks, and that no
tolls are collected or charged against their boats, does not except them
from the regulation prescribed by the act. They are subject to like reg-
ulations as other owners whose boats pass through such canal and locks.

APPEAL from Multnomah County. The facts are stated
in the opinion of the court.

*Wm. Strong and W. H. Effinger,* for appellant:
Our first position is that the facts stated in this petition

are not sufficient to entitle the party to the remedy sought. This petition is brought under section 583 of the civil code, which only authorizes the writ to issue to an inferior court, corporation, board, office or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station.

This whole proceeding is based upon the assumption that section 12 of the act creating the board of canal commissioners, approved October 10, 1876, has imposed a duty upon the owners of boats using the locks and canal which can be enforced by a mandamus. Even were such a duty lawfully imposed upon the owners of vessels, it is not a duty resulting from an office, trust or station; it results from their being the owners of property and engaged in transporting freight and passengers through the locks; that is, from being the owners of particular property engaged in a particular business. The exercise of this power of the court can only be set in motion upon the petition of the party beneficially interested. (Code, sec. 384.) Is the state, whom the petitioners professedly represent, such a party?

In the particular provisions of section 12 of the act of October 19, 1876, perhaps the owners of the canal and locks may be interested; but they have it in their power to ascertain the facts as to the number of tons freight and the number of passengers carried through the locks without applying to the court for its assistance. They may require satisfactory information before permitting the boat to enter or pass through. It is provided in section 583 of the code, that the writ shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of law. But how does the state have such an interest in knowing the number of tons freight and the number of passengers which pass through the locks? (See 42 Md. 203.)

The preamble and title, as well as the entire body of the act of October 19, 1876, show that its object and the intention of the legislature in passing it was to put a construction upon the act of October 21, 1870, entitled "An act to

appropriate funds for the construction of a steamboat canal at the Willamette Falls," and also to provide special modes and new penalties for enforcing that construction. This act of October 21, 1870, has been adjudged by the supreme court of this state to be a contract: (*Goldsmith* v. *Brown*, 5 Or. 418.)

The state, therefore, if interested in these proceedings at all, is interested as a party to a contract, and the commissioners of the canal, appointed under this act of October 19, 1876, represent the state as a contractor and not as a sovereignty in this matter of the canal and locks. This does not, it seems to us, give the plaintiff in this petition the right to set in motion the special powers of the court to issue this writ. The state is not beneficially interested in the issuing a mandamus, when it has plain, adequate and complete remedy by due course of law. States, as contractors, are bound the same as individuals. Under our constitution, or any other free, fundamental law, a state cannot construe and enforce its contracts by virtue of its powers of sovereignty. It must resort to the ordinary laws, the same as a citizen. (18 Cal. 590; 47 Me. 189; 2 Beasley N. J. 81.)

The answer in this case shows that the defendant owns the boats, and owns the canal and locks, which it holds for the use of its own boats as a part of its line of transportation upon the Willamette river, above and below the falls; and further, that no tolls are charged or payable on the boats, so that the state has not even the claim of its alleged contract to excuse the calling for this information, as the state is only interested, if at all, in the toll-paying freight which passes through the locks. There is nothing to prevent the owners of the locks from carrying freight for nothing if they choose. (21 Pa. 131.)

This is merely an attempted interference with the private business of the defendant, and is not within the scope of legitimate legislation. Counsel for plaintiff, in the court below, virtually abandoned all claim of right to the exercise of the power on the part of the legislature to pass a law of this nature under any other constitutional authority except

the police power of the state.   This power, which has been exercised under all governments, is variously defined by law written.

Blackstone defines it to be "the due regulation and domestic order of the kingdom, whereby the inhabitants of a state, like the members of a well-governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood and good manners, and to be decent, industrious and inoffensive in their respective stations." (4 Com. 162.)   It is defined by Jeremy Bentham in his works: "Police is in general a system of precaution, either for the prevention of crime or of calamities.   Its business may be distributed into eight distinct branches: 1. Police for the prevention of offenses; 2. Police for the prevention of calamities; 3. Police for the prevention of epidemic diseases; 4. Police of charity; 5. Police of interior communications; 6. Police of public amusements; 7. Police for recent intelligence; 8. Police for registration."

These definitions, among the oldest that have been given of this power, and of the subjects of legislation to which it is applicable, do not specifically treat of it as materially interfering with the use of property by its owner.

Judge Cooley, in his Constitutional Limitations, defines it: "The police of a state, in a comprehensive sense, embraces its system of internal regulation; by which it is sought not only to preserve the public order, and to prevent offenses against the state, but also to establish for the intercourse of citizen with citizen, those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own, so far as is reasonably consistent with a like enjoyment of rights by others." (Cooley Const. Lim. 572, n. 1.)   But acts which can only be justified on the ground that they are police regulations, must be so clearly necessary to the safety, comfort or well-being of society, or so imperatively required by the public necessity, that they must be taken to be impliedly excepted from the words of the constitutional provision."   (*People* v. *J. & M. P. R. Co.*, 9 Mich. 285.)

It must appear, first, that plaintiff has a clear legal right to the performance of the particular act or duty at the hands of the defendant; and, second, that the law affords no adequate remedy. (High. on Ex. Legal Rem., sec. 10, and notes; Id., secs. 12–22, and notes.) The tendency of the courts of the United States is to adhere to the well-established rules of the common laws. (Id., sec. 30.) It is not a proper process for the enforcement of rights resting in contract. (Id., sec. 25, and notes; Id., sec. 28.) Duties imposed on a corporation by contract will not be enforced by madamus. (Id., sec. 321; 16 Ohio St. 308.) The right of property does not derive its origin from constitutions; it is above and beyond all constitutions. (Cooley on Con. Lim. 36, 354; 13 Wend. 328.) Due process of law, due course of law, and the law of the land, all mean the same thing. (Cooley on Con. Lim. 351.) Forfeitures of rights and property cannot be adjudged by legislative act. (Id. 362.)

Laws attempting to control parties as to the manner in which they shall use their property are not binding. (Id. 385.) A statute which selects particular individuals from a class or locality and imposes upon them special obligations from which others in the same locality or class are exempt, is unconstitutional. (Id. 390, and notes, *Whalley's heirs* v. *Kennedy*, 2 Yerg. 554.) No man has a right to judge in his own cause. (Cooley on Con. Linn. 410.) It is not within the legislative authority to empower a man to judge for himself. (Id. 412.) Police regulations do not extend to an amendment of the charter, or the curtailment of the corporate franchise. (Id. 576, and notes; 5 Hill, 209; 7 How. 283; 20 Cal. 534; 11 Pet. 102; 12 How. 299.)

The contract between the government and a corporation created by its charter, is to be construed upon the same principles which are applied to a contract between individuals. (*State* v. *Noyes*, 47 Me. 189.) It is immaterial whether the instrument by which the public faith is pledged is in terms a contract, or in form a mere legislative enactment; in either case it is equally a contract within the meaning of the constitution. (*Bridge Co.* v. *Hoboken & Co.*, 2 Beas. N. J. 81.) An act cannot govern the decision of a

case which is based on a contract made prior to the passage of the act. (*Weaver* v. *Maillet*, 15 La. An. 395; 20 Cal. 143.)

*W. W. Thayer and Strahan & Burnett*, for respondent.

The only question in the case for determination is the validity or invalidity of the act of the legislature before mentioned. It involves the authority of the legislature to require the appellant and other owners of steamboats who use the canal and locks at Oregon City, to furnish a list of the tons of freight and number of passengers, as in said act specified. The enterprise of building the canal and locks was intended as a public benefit and undertaken as a public necessity. It had its origin with the legislature. That legislature appropriated funds out of the internal improvement fund to aid in their construction. One of the conditions upon which the appropriation was made was that the locks company should pay to the state ten per centum of the net profits arising from the tolls collected for freight and passengers passing through the canal and locks, which should become a part of the common school fund. (Laws of 1870, 16.) The same act limits the price for tolls and provides in favor of an appropriation forever of the works by the state at the end of twenty years upon payment to the "said corporation the actual value thereof."

In view of these various provisions, it can hardly be contended that the act of 1870 was a mere private grant, and beyond legislative control or interference. The object and design of the act, its various provisions, and the reasons which induced the legislature to adopt it, clearly indicate a purpose to secure to the public the unobstructed navigation of the Willamette river for all future time, constructing and maintaining the canal and locks, tended to facilitate the transportation of the products and merchandise which affected the interests of the larger portion of the population of Oregon. It was a public enterprise, set on foot by public sentiment, carried on by public aid, and set apart and devoted to public use.

In *Munn & Scott* v. *People of Illinois*, the supreme court of the United States held that all property which is effected

with a public interest, ceases to be *juris privati* only, and becomes subject to regulation for the public benefit, and property is effected with a public interest whenever it is devoted to such use as to make it of public consequence and to directly affect the public at large. (Am. Law Reg., Sept. 1877, p. 526; 4 Otto, 113.)

If that principle is correct, then there can be no question in regard to the canal and locks being the subject of legislative control. But the case last referred to goes much farther, for it renders private property the subject of regulation for the public benefit whenever its owner devotes it to such use as to make it of public consequence, and to directly affect the community at large. Then *a priori* should property of great public consequence, brought into existence by legislative action, for the public benefit, materially affecting the public at large, and held by a party owing its origin to legislative authority. There are no limits to legislative power except those contained in the constitution of the United States and of the state.

As long as the legislature steers clear of the inhibitions contained in those instruments, its acts are absolute and uncontrollable, and it cannot, we submit, be successfully maintained that any of the provisions of the act of 1876, regulating the use of the canal and locks, trenches in the least degree upon any prohibition contained in either constitution; it impairs no contract, for the state reserved certain rights in the act of 1870, with respect to that notorious institution, among which is the right to appropriate it as before mentioned. As incident to that right, has not the legislature authority to preserve statistical information as to the number of tons of freight and number of passengers that pass through it upon the various steamboats employed in navigating the Willamette? Has not the public the right to be informed as to its importance? How else could it be ascertained as to whether or not it would be sound policy to appropriate it and pay therefor its appraised value? Is the exercise of such authority any more arbitrary than to require that a taxpayer furnish a sworn list of his property for the purposes of taxation, or an inhabitant to give the

number and names of the members of his family for the census, and may it not be about as important? (46 Cal. 589; 11 Pet. 102.) Again, the state is entitled to ten per centum of the net earnings of the institution. Should it not therefore have authority to adopt measures to ascertain the probable amount of those earnings? It is no more than providing a mode of evidence.

The appellant claims to own the canal and locks; whether as a matter of fact it does or not makes no difference, as it could only take the title thereto subject to all the conditions imposed by the act of 1870 upon the original company. (4 Otto. 155, 164.) That is a public act, and every one is bound to take notice of its provisions. But we deny the right of the Willamette Falls Canal and Locks Co. to sell the canal and locks. We submit that said act of 1870 cannot be construed so as to authorize it to sell out the work; the grant was to that company; it was that company that was limited in its charges of tolls, and to that company the state was to pay the appraised value in event it appropriated it; the payment of the ten per centum net earnings is to be made by that company; and that company alone undertook the performance of the conditions upon which the grant was made, and which conditions were perpetual; it was a personal trust imposed upon the Willamette Falls Canal and Locks Company, and no other corporation can be substituted in its place without the consent of the state of Oregon. (2 Otto, 237; and cases cited.) If we are correct in this view, then the appellant's plea that it owned not only the said steamboats, but also the canal and locks, is sham. But admitting that it owns the canal and locks, that it has become substituted in the place of the original company, are not its relations with the state the same as those of the former company? Or will it be contended that it was in the power of the Willamette Falls Canal and Locks Company, by a sale of its franchise and property rights, without the assent of the state, to destroy in effect the conditions upon which the grant was made, and the obligations which constituted the consideration of it?

By the Court, PRIM, C. J.:

This proceeding was commenced in the circuit court of Multnomah county, to compel appellant, as the owner of certain steamboats, by writ of mandamus to furnish the secretary of the board of canal commissioners with a list of the tons of freight and number of passengers passed through said canal and locks, as prescribed by section 12 of an act entitled "An act to provide a board of canal commissioners for the canal and locks at the Willamette Falls, and to otherwise regulate the passage of steamboats and other water craft through the same," approved October 19, 1876. (Ses. L., 1876, 14.)

A demurrer was interposed to the petition and writ, by appellant, on the ground that they do not contain a statement of facts sufficient to entitle respondent to the writ. This application is based upon section 583 of the civil code, which authorizes the writ "to be issued to any inferior court, corporation, officer or person, to compel the performance of an act which the law specially enjoins as a duty, resulting from an office, trust or station." Section 12 of an act entitled an act to provide a board of canal commissioners, etc., approved October 19, 1876, provides that "it shall be the duty of boat owners, using the said locks, to make out two certified lists of tons of freight and number of passengers passing through the said locks, which lists are to be tendered, one to the agent of the locks company, and one to the secretary of the board of canal commissioners, and by both preserved for reference," etc.

Section 16 of said act provides that "the board shall annually certify to the secretary of state the number of tons of freight and the number of passengers passing through said locks, * * * to the end that knowledge of the receipts of the said locks company may be authoritatively had." While it is admitted by appellant that section 12 of said act imposes a duty upon all boat owners, who may pass their boats through said locks, to furnish a list of freight and passengers, as therein provided, yet it is claimed that such duty cannot be enforced by the writ of mandamus, because it is not a duty, as they contend, resulting from an

office, trust or station, within the meaning of section 583 of the code. By reference to Webster's Dictionary, we find that the word station is defined to mean employment, occupation or business.

Steamboats, when engaged in the transportation of freight and passengers upon a navigable stream for hire, are common carriers, which is a business in which the public has an interest. And the owners of boats engaged in such business may be said to occupy a sort of public office, station or business, upon whom the legislature in the exercise of its sovereign power has seen fit to impose this regulation in behalf of the public. And we see no reason why such regulation may not be enforced by this writ, for the want of any other adequate remedy.

In the state of Illinois it has been held to be the proper remedy to compel a railway company to deliver to a particular warehouse or grain elevator grain consigned thereto in bulk along the line of said railway. The right to relief in such cases is based upon the duty or obligation of such companies to perform such duty as common carriers, and the want of any other adequate remedy. (*C. & N. W. R. R. Co.* v. *State of Illinois,* 56 Ill. 565.)

But it is further claimed by counsel on behalf of appellant, that section 12 of the act of 1876, which imposes the regulation in question upon the owners of steamboats and other water craft, is an unwarranted attempt on the part of the legislature to interfere with private business, and is not within the scope of legitimate legislation, and therefore should be treated as void. The position of the appellant is based upon the theory that the locks as well as the steamboats in question are the private property of the appellant, and therefore subject only to its control and private management, the same as any other private business, without regard to such regulations as may be imposed by the legislature in behalf of the public. This theory, we think, is not well founded, either in law or fact.

To say nothing of the assistance granted by the state by the passage of an act entitled "An act to appropriate funds for the construction of a steamboat canal at the Willamette

Falls," approved October 21, 1870, we find that the canal and locks were constructed by a company incorporated and organized under the laws of the state for that purpose. They were constructed upon the waters of a navigable stream, in which the public have an interest. The right of eminent domain has been put forth in its behalf by the state, through which private as well as public property has been condemned and appropriated to its use. It has been placed in the possession of an important and valuable franchise not possessed by other private individuals. In fact, it may be said to have been placed in the possession of a valuable property " standing in the very gateway of commerce," which not only " affects a great public interest," but in which the " public have a proprietary interest as a part owner."

In such matters we are not aware of any limitation upon the legislative power of a state, except such as are imposed by the constitutions of the United States and this state; and no particular provision in either of those instruments has been pointed out by counsel on behalf of appellant by which the legislation in question is prohibited. Under our fundamental law, as we understand it, every state has the right to exercise the power of sovereignty within the limits of its dominion; that is to say, the power to govern men and things within such limits; and it is by virtue of this power that it legislates, and its authority to make regulations of commerce is as absolute as its power to pass health laws, except in so far as it has been restricted by the constitution of the United States. (Lic. Cas. 5ʼ How. U. S. 583.)

In *Munn & Scott* v. *The State of Illinois,* Mr. Chief Justice Waite, in speaking of these powers, says: "Under these powers the government regulates the conduct of its citizens one towards another, and the manner in which each shall use his own property when such regulation becomes necessary for the public good. In their exercise it has been customary in England from time immemorial, and in this country from its first colonization, to regulate ferries, common carriers, hackman, bakers, millers, wharfingers, inn-

keepers, etc., and in so doing to fix a maximum of charges to be made for services rendered, accommodations furnished, and articles sold. To this day, statutes are to be found in many of the states upon some or all of these subjects, and we think it has never yet been successfully contended that such legislation came within any of the constitutional prohibitions against the interference with private property." In this connection, he further says that "when private property is effected with a public interest, it ceases to be *juris privati* only, * * * but becomes clothed with a public interest when used in a manner to make it of a public consequence, and affects the community at large. When therefore one devotes his property to a use in which the public has an interest, he, in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has created." (*Munn & Scott* v. *The State of Illinois*, 4 Otto, 125.)

Thus appellant having been the owner of certain steamboats engaged in the transportation of freight and passengers, for hire, upon the waters of a navigable river in which the public have a proprietary interest as part owner, and having devoted its said boats to a use in which the public have an interest, it must submit to such commercial regulations as may be imposed by legislative authority for the public good.

The regulation imposed by section 12 of said act, we think is a reasonable one, and not beyond the scope of legitimate legislation. But it is further urged on behalf of appellant that it is a private corporation duly incorporated under the laws of the state for the purpose, among other things, of carrying on the business of navigating the waters of the Willamette river, with steamboats and other water craft, for the transportation of freight and passengers for hire, and that since the first day of January, 1876, it had been engaged in said business; and that ever since the eighth day of March, 1876, it has been the sole owner of said canal and locks, which it holds for the use of its own boats as part of its line of transportation upon said river,

Opinion of the Court—Boise, J.

above and below the falls; and that no tolls are charged or payable on said boats, or freight and passengers shipped therein, and passed through said canal and locks.

To this proposition of appellant we have to say that notwithstanding the said canal and locks may now be and have been owned by appellant ever since the eighth day of March, 1876, nevertheless we are of the opinion that it is subject to the regulation in question, and is obliged to furnish certified lists of the amount of freight and the number of passengers carried through the same on its boats, the same as the owners of other boats and water craft.

It follows from the views herein expressed that the judgment of the court below should be affirmed.