THE HANOVER FIRE INSURANCE COMPANY, Appellant, *vs.*
GEORGE F. HARDING, County Collector, Appellee.

*Opinion filed June 22, 1927—Rehearing denied Dec. 20, 1927.*

1. TAXES—*tax on net receipts of foreign insurance companies under section 30 of act of 1869 is valid if assessed as other personal property taxes.* Under section 30 of the act of 1869, when the net receipts of foreign insurance companies are placed upon the tax list they are to be treated as personal property valuation and are to be scaled and debased by the taxing officials as is customary in handling the valuations of personal property under the Revenue law of 1898; and when the tax under said section is so assessed it is not subject to the objection that it discriminates against foreign insurance companies, and it is not a denial of the equal protection of the laws. (*People* v. *Kent,* 300 Ill. 324, *People* v. *Barrett,* 309 id. 53, and *Hanover Fire Ins. Co.* v. *Carr,* 317 id. 366, overruled.)

2. SAME—*uniformity in mode of assessment as well as in rates is required.* Uniformity in taxation implies equality of burden, and this cannot exist without uniformity in the mode of the assessment as well as in the rate per cent of taxation.

3. SAME—*court may determine what portion of a tax is valid.* While the Supreme Court has no power to make a tax assessment it has power to set aside taxes which are unlawful, and also has power, and it is its duty in a proper case, to determine what portion of a tax, if any, is lawful, where such fact can be determined from the record.

4. STATUTES—*construction upholding validity of statute will be adopted, if possible.* Where a statute is susceptible of two con-

structions, one of which would render it constitutional and the other unconstitutional, the court should so construe the statute as to uphold its validity if such can be done by any legitimate rules of construction, and if the construction is doubtful the doubt will be resolved in favor of the validity of the law.

5. SAME—*a later statute or subsequent erroneous construction cannot affect validity of former statute.* Where a law was valid when enacted and was capable of being given a valid construction, the fact that it has been given an erroneous construction which would render it invalid cannot affect its validity; nor can a subsequent statute without amendment of the prior law, expressly or by implication, have the effect of rendering the former statute invalid, and where one of the two must fall because of unjust discrimination when construed together, the later statute, and not the first, will be held invalid.

6. SAME—*statute long regarded as valid will be upheld, if possible.* Long continued acquiescence in the constitutionality of a statute may properly be considered by the court as a factor in upholding its constitutionality.

DUNN, FARMER and THOMPSON, JJ., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

CHARLES S. DENEEN, OSCAR B. RYON, HICKS & FOLONIE, CHARLES E. WOODWARD, and SILBER, ISAACS, SILBER & WOLEY, (C. J. DOYLE, and E. M. GRIGGS, of counsel,) for appellant.

ROBERT E. CROWE, State's Attorney, FRANCIS X. BUSCH, Corporation Counsel, LEON HORNSTEIN, HIRAM T. GILBERT, CLAIR E. MORE, and HARRIS F. WILLIAMS, for appellee.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

Appellant, the Hanover Fire Insurance Company, a corporation of New York, filed its bill in the superior court of Cook county against Patrick J. Carr, county treasurer and *ex-officio* tax collector of Cook county, for an injunction

to restrain the collection of certain taxes levied against it under and by virtue of section 30 of an act of March 11, 1869, entitled "An act to incorporate and to govern fire, marine and inland navigation insurance companies doing business in the State of Illinois." The prayer of the bill was in the alternative. It prayed (1) that the collection of the whole amount of the tax extended be enjoined because section 30 was unconstitutional, or, (2) in case section 30 was valid, that the collection of approximately one-half of the tax extended be enjoined because the assessment and extension were against the "full amount" of net receipts, while the section directs "an assessment," namely, upon net receipts at the same rate of taxation as against other personal property. The collector filed an answer denying the claims of the bill, and after replication the cause was heard by the trial court, which in its decree made findings of fact based on a stipulation by the parties and made the injunction permanent as to a certain amount of the tax not in dispute in this court and dismissed the bill of complaint as to the remainder for want of equity. Appellant appealed from this decree to this court, which by a divided court affirmed the decree of the superior court in *Hanover Fire Ins. Co.* v. *Carr,* 317 Ill. 366, to the opinion in which case reference is made for a fuller statement of the pleadings, facts and holdings of the court. Appellant obtained a review of the decision of this court by the Supreme Court of the United States upon a writ of error under section 237 of the judicial code of the United States. That court reversed the judgment of this court and remanded the case to this court for further proceedings not inconsistent with the opinion filed in the cause. (*Hanover Fire Ins. Co.* v. *Carr,* 272 U. S. 494.) Upon the mandate of the Supreme Court of the United States in this cause being filed in this court, appellee entered a motion that a judgment be entered herein reversing the decree of the superior court of Cook county and remanding the cause

to that court, with directions to enter a decree providing as follows: First, that the temporary injunction heretofore issued be dissolved; second, that the Hanover Fire Insurance Company pay to George F. Harding, county treasurer of Cook county and *ex-officio* county collector of that county, successor in office to Patrick J. Carr, the sum of $2155.24, together with the costs, interest and penalties thereon provided by law, and that upon such payment being made the county collector be enjoined and restrained from demanding, collecting or receiving of or from appellant any amount of taxes on its net receipts for the year 1923 in excess of the sum of $2155.24, and the costs, interest and penalties thereon provided by law; third, that so much of appellant's bill of complaint as relates to the sum of $2155.24 of taxes, together with the costs, interest and penalties thereon as authorized by law, be dismissed for want of equity. Appellant filed its suggestions in opposition to the motion, in which it claimed that the Supreme Court of the United States has held that section 30. of the act of 1869 violates the fourteenth amendment; that the claim now made by appellee is inconsistent with his previous contention; that the tax is a tax for revenue, and, so considered, is in violation of section 1 of article 9 of the constitution of Illinois, and that the court has no power to make a tax assessment, and hence cannot ascertain and fix the debased and equalized value of the net receipts or the amount of the tax appellant must be required to pay.

The section in question reads as follows:

*"Foreign companies—Tax on net receipts.*] Sec. 30. Every agent of any insurance company, incorporated by the authority of any other State or government, shall return to the proper officer of the county, town or municipality in which the agency is established, in the month of May, annually, the amount of the net receipts of such agency for the preceding year, which shall be entered on the tax lists of the county, town and municipality, and subject to the same

327—38

rate of taxation, for all purposes—State, county, town and municipal—that other personal property is subject to at the place where located; said tax to be in lieu of all town and municipal licenses; and all laws and parts of laws inconsistent herewith are hereby repealed: *Provided,* that the provisions of this section shall not be construed to prohibit cities having an organized fire department from levying a tax, or license fee, not exceeding two per cent, in accordance with the provisions of their respective charters, on the gross receipts of such agency, to be applied exclusively to the support of the fire department of such city." (Cahill's Stat. 1925, sec. 159, p. 1405.)

This section has been in force since 1869 and was part of the act of March 11 of that year, entitled "An act to incorporate and to govern fire, marine and inland navigation insurance companies doing business in the State of Illinois." The section was amended to the above form by an act approved May 31, 1879.

This suit presents the question of the validity of the assessment made by a taxing officer under section 30 for the year 1922. At the time this statute was passed all personal property was required by law to be listed and taxed at its cash value. By the general Revenue act of Illinois in force since February 25, 1898, (Cahill's Stat. 1925, sec. 329, p. 2042,) personal property is to be valued at its fair cash value, which value is to be set down in one column to be headed "Full value," and one-half part thereof is to be ascertained and set down in another column headed "Assessed value." The one-half value of all the property so ascertained and set down is to be the value for all purposes of taxation. It is stipulated in this case and was found by the trial court that for the year 1923, and for many years prior thereto, there has been what is called an equalization, which systematically and intentionally reduces the amount set down in the column headed "Full value" to not more than sixty per cent of the actual market value of the personal

property returned, and by further reducing this by fifty per cent to make the assessed value accord with the statute, the tax is collected only on thirty per cent of the full value.

The superior court found that the actual amount of net cash receipts of appellant was $90,824, (less by $45,000 than the amount reported by the board of review,) so that its decree forbade the collection of more than $7184.18, instead of $10,678.50, for which the warrant had issued, but denied further relief. Appellant insisted that under the previous practice and proper construction of section 30 as a property tax with due equalization and debasement, the tax assessed should have been $2155.24, and that this, if anything, is all that should be collected from it. The Supreme Court of the United States in its opinion herein states: "The Supreme Court of Illinois for many years held the payment of a tax on the net receipts was a tax on personal property. (*Walker* v. *City of Springfield*, 94 Ill. 364; *City of Chicago* v. *James*, 114 id. 479; *City of Chicago* v. *Phœnix Ins. Co.* 126 id. 276; *National Fire Ins. Co.* v. *Hanberg*, 215 id. 378; *People* v. *Cosmopolitan Fire Ins. Co.* 246 id. 442.) The net receipts were the gross receipts from each agency after the operating expenses had been deducted. The losses from fire and other risks assumed were not deducted. (*National Fire Ins. Co.* v. *Hanberg, supra.*) It is quite apparent from reading these cases that in practice the net receipts were treated as personal property and their assessment was by equalization and debasement reduced from full value as all other personal property, until the decisions in *People* v. *Kent*, 300 Ill. 324, (decided in 1921,) and *People* v. *Barrett*, 309 id. 53." These latter cases, upon the principle of *stare decisis*, were followed by this court in this case. (*Hanover Fire Ins. Co.* v. *Carr, supra.*) The Supreme Court of the United States in its opinion in this case construes *People* v. *Barrett, supra, People* v. *Kent, supra,* and *Hanover Fire Ins. Co.* v. *Carr, supra,* as holding that the "tax under section 30

was an occupation tax, and that no reduction should be permitted to foreign insurance companies in the assessment for taxation of their annual net receipts," and held that "an occupation tax imposed upon 100 per cent of the net receipts of foreign insurance companies admitted to do business in Illinois is a heavy discrimination in favor of domestic insurance companies of the same class and in the same business, which only pay a tax on the assessment of personal property at a valuation reduced to one-half of sixty per cent of full valuation of the property." It held that a tax so imposed is a denial of the equal protection of the laws. It did not hold that section 30 was unconstitutional because of its imposition of a tax upon foreign fire, marine and inland navigation insurance companies on the net receipts of all their business, whether fire, marine, inland navigation or other risks, as a denial of the equal protection of the laws when domestic insurance companies pay no such taxes on such net receipts, but, on the contrary, upon this subject said: "Under the previous decisions of the Supreme Court of Illinois, when the net receipts were treated as personal property and the assessment thereon as a personal property tax subjected to the same reductions for equalization and debasement, it might well have been said that there was no substantial inequality as between domestic corporations and foreign corporations, in that the net receipts were personal property acquired during the year and removed by foreign companies out of the State, and could be required justly to yield a tax fairly equivalent to that which the domestic companies would have to pay on all their personal property, including their net receipts or what they were invested in. It was this view, doubtless, which led to the acquiescence by the State authorities and the foreign insurance companies in such a construction of section 30 and in the practice under it." In *State Railroad Tax Cases,* 92 U. S. 575, it is said: "Perfect equality and perfect uniformity of taxation as regards

individuals or corporations, or the different classes of property subject to taxation, is a dream unrealized. It may be admitted that the system which most nearly attains this is the best, but the most complete system which can be devised must, when we consider the immense variety of subjects which it necessarily embraces, be imperfect, and when we come to its application to the property of all the citizens, and of those who are not citizens, in all the localities of a large State like Illinois, the application being made by men whose judgments and opinions must vary as they are affected by all the circumstances brought to bear upon each individual, the result must inevitably partake largely of the imperfection of human nature and of the evidence on which human judgment is founded." In *Tappan* v. *Merchants' Nat. Bank,* 19 Wall. 490, it was said: "Absolute equality in taxation can never be obtained. That system is the best which comes the nearest to it. The same rules can not be applied to the listing and valuation of all kinds of property. Railroads, banks, partnerships, manufacturing associations, telegraph companies, and each one of the numerous other agencies of business which the inventions of the age are constantly bringing into existence, require different machinery for the purposes of their taxation. The object should be to place the burden so that it will bear, as nearly as possible, equally upon all. For this purpose different systems adjusted with reference to the valuation of different kinds of property are adopted. The courts permit this."

There is an essential difference between foreign and domestic companies with reference to their property in this State. The property of a domestic company consists of its franchise, capital stock and other tangible property, resultant, in part, from its net receipts, and it is taxed thereon, while foreign companies in any given year have no tangible property of any consequence subject to taxation under the general law. There is therefore no way in which they can

be taxed at all upon their property unless upon their net receipts from business transacted. It was the intention of the framers of the constitution that every person or corporation should pay a tax in proportion to the value of his or its property. The Revenue act provides different methods for making returns to the taxing official of different kinds of property and of different classes of corporations. The character of the property in this State of foreign insurance companies differing so widely from that of domestic companies, section 30, in providing different methods for the return of their properties, does not offend against the constitutional requirement that such taxes shall be uniform as to the class on which the law operates. *Pacific Express Co.* v. *Seibert,* 142 U. S. 339; *American Sugar Refinery* v. *Louisiana,* 179 id. 89; *Shaffer* v. *Carter,* 252 id. 37; *Travis* v. *Y. N. T. Co.* 252 id. 60.

It is contended by appellant that section 30 cannot be sustained as the net receipts are not valued by some taxing officer, as required by the first part of section 1 of article 9 of the constitution. When the return is made to the taxing officer, since net receipts, like money, have a fixed value, the placing of the amount so returned on the assessment roll and the scaling and debasing of the same by the taxing officer are a valuing thereof by such officer as in the case of moneys or other property having a fixed value, and when scaled and debased by the taxing officer and the amount on which the tax is levied is so fixed, this is a valuing thereof within the meaning and intent of the constitutional requirement. When this statute was enacted, and as construed by the insurance companies and taxing bodies until *People* v. *Kent, supra,* and *People* v. *Barrett, supra,* section 30 of the statute, while it provided a method of taxing the property of foreign insurance companies different from that applying to domestic companies, did not discriminate against foreign insurance companies admitted to do business in Illinois in favor of domestic insurance compa-

nies of the same class and in the same business, which pay only a tax on personal property at a valuation reduced to one-half of sixty per cent of the full value of that property, and it was not a denial of the equal protection of the laws to such foreign insurance companies.

Where it is contended that a section of a statute is in contravention of the constitution and it is susceptible of two constructions, one of which would render it constitutional and the other unconstitutional, it is the duty of the court before which the question of its constitutionality is raised, to so construe the section as to uphold its constitutionality and validity if the same can be done by any legitimate rule of construction, and if the construction is doubtful the doubt will be resolved in favor of the validity of the law. (*People* v. *Newcom,* 318 Ill. 188; *People* v. *McBride,* 234 id. 146; 6 R. C. L. 78.) It has been said that the eyes of courts are never limited to the mere letter of a law, but they may look behind the letter to determine its true purpose and effect. (6 R. C. L. 81.) It is evident that the purpose of the legislature, and its effect after its passage, for many years was to place domestic insurance companies and foreign insurance companies which had been admitted to do business in this State upon an equal footing and to cause them to contribute equally towards the expenses of the State and local municipalities within the State. The only question for this court to determine is whether the legislature, at the time it passed the act in question, had power to pass the same. If it had, and it was constitutional at that time, then it could not be subsequently rendered unconstitutional by legislative action with reference to other matters or by erroneous construction by the courts. A law may be amended either expressly or by implication, but its constitutionality after original passage cannot be affected by subsequent legislation if by reason of such subsequent legislation, without the amendment of the previous act either expressly or by implication, a state of facts would

arise, by reason of the provisions of the two laws construed according to the strictest letter thereof, by which discrimination might result in favor of a portion of one class as against another portion of the same class engaged in the same business. In such case it would be the duty of the court to construe the two laws together in such manner as to render them both constitutional, if that could be done by any reasonable rule of construction, and if that were not possible, then the second law, and not the first, must fall by reason of its discrimination in imposing unequal burdens upon persons of the same class.

In the instant case, when section 30 of the act of 1869 was passed it was not subject to the objection that it discriminated against foreign insurance companies admitted to do business in Illinois in favor of domestic companies of the same class and in the same business, and it was not a denial of the equal protection of the laws to such companies. Prior to the passage of the general Revenue act in 1898 its operation had no such effect. The taxes upon the net receipts of foreign insurance companies and the personal property of domestic companies were levied in exactly the same manner and at the same rates. After the passage of the act of 1898 and prior to 1922, by reason of the construction placed upon the Revenue act of 1898 and section 30 by the taxing bodies that the amount of the net receipts of foreign insurance companies should be entered on the tax lists of the county, town and municipality and be subject to the same rate of taxation for all purposes that other personal property was subject to at the place where located, that the several entries on the tax list should be treated in exactly the same manner, and that the provision in the law of 1898 for scaling or debasing the values on the tax list applied to all entries on that list, whether entered thereon as the result of a schedule of personal property given to the assessor or as the return of the net receipts of the agency for a foreign insurance company, its

constitutionality was unquestionable. To adopt any other construction would render the law of 1898, and not section 30 of the law of 1869, unconstitutional, and thus create chaos among all taxing bodies. This construction was not alone placed upon these laws by the insurance companies and the taxing officials of the State, but in *People* v. *Cosmopolitan Ins. Co. supra,* (a case in which the net receipts had been scaled, debased and treated the same as other personal property,) this court upheld the tax, and said: "The net receipts are personal property and are to be listed by the board of assessors and board of review and taxed the same as other property.—*National Fire Ins. Co.* v. *Hanberg,* 215 Ill. 378." That this construction was proper, and that it was the intention of the legislature at the time it enacted section 30 that the amount of the net receipts when listed upon the tax books should be treated by the taxing officials the same as other personal property, is evidenced by the language of the act itself. Section 30 provides that "net receipts shall be subject to the same rate of taxation * * * that other personal property is subject to at the place where located." The use of the word "other" indicates that the net receipts were to be considered as personal property and treated the same as other personal property. Clearly, this provision means that not only the percentage of the rate but the basis of the valuation shall be the same. Taxing by a uniform rule requires uniformity not only in the rate of taxation but also uniformity in the mode of the assessment upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation, and this equality of burden cannot exist without uniformity in the mode of the assessment as well as in the rate per cent of taxation. (*Green* v. *L. & I. R. R. Co.* 244 U. S. 499; *Boyer* v. *Boyer,* 113 id. 889; *Cummings* v. *National Bank,* 101 id. 153; *Exchange Bank* v. *Hines,* 3 Ohio St. 1.) Section 30 and the law of 1898 should be construed together, and when the net receipts are placed upon the tax list they are to be treated as

personal property valuation, and are to be scaled, debased and treated the same as other personal property by the taxing officials, and in so far as the *Kent, Barrett* and *Hanover Fire Ins. Co. cases* are inconsistent with this construction they are overruled. When so construed, section 30 is not subject to the objection that it discriminates against foreign insurance companies admitted to do business in Illinois in favor of domestic companies of the same class and the same business, and it is not a denial of the equal protection of the laws to such companies.

Section 30 has been considered by this court many times and its constitutionality was never raised from the time of its enactment until 1922. It has never been held unconstitutional by this court. It was not held unconstitutional by the Supreme Court of the United States in *Hanover Fire Ins. Co.* v. *Carr, supra.* The holding of that court was that the construction placed by this court upon section 30 in the *Kent* and *Barrett cases* and in this case would cause discrimination and that the tax of $10,678.50 was not a valid tax. Appellant in its brief says: "From 1898 down to and including 1922 net receipts were assessed and taxed equally and uniformly with personal property and upon the same basis as a like amount in value of personal property. The same principles, practices, procedure and rules were applied to the assessment of net receipts as were applied to the assessment of personal property. This practice from 1898 to 1922, inclusive, was uniform, unbroken, consistent and notorious. Every assessing officer in the State pursued this method. Every tax-levying authority acquiesced in this construction as the true and proper one. Every fiscal officer in the State construed, interpreted and applied the statute to mean equality of taxation as between net receipts and personal property. No assessment against net receipts was made upon any other basis than that of equality until the assessment made by the board of review of Cook county in 1923, involved in this litigation. During

all the years from 1898 to 1923, inclusive, the General Assembly held eleven sessions. It knew that this system of taxation was universal. The law was not changed."

Long continued acquiescence in the constitutionality of a statute may properly be considered as a factor which sometimes influences the court in upholding its constitutionality. (*State* v. *Narragansett,* 16 R. I. 424.) In 1907 this court in *Hill* v. *Tohill,* 225 Ill. 384, in passing upon a statute enacted in 1857, said: "It is to be observed that this section, except for a mere verbal variance, was first enacted in 1857, (Sess. Laws of 1857, p. 159,) and has been continuously in force since that time, and if violative of the constitution of 1870 it also contravened the constitution of 1848. To sustain the appellee's contention now would be to unsettle that which has for well nigh fifty years been tacitly held by the courts of the State to be the law, and would be to destroy property rights which have grown up and been established on the theory that this statute was enforcible. This law having been regarded as valid and enforced without question as to its constitutionality by this court and other courts of the State since 1857, we would not now be justified in holding it to be unconstitutional unless its invalidity was clear, certain and beyond question. (Cooley's Const. Lim.—7th ed.—103; 104; Story on the Constitution, sec. 405; *Martin* v. *Hunter's Lessees,* 1 Wheat. 304; *Bank* v. *Halstead,* 10 id. 51; *Stuart* v. *Laird,* 1 Cranch, 299; *Swift* v. *Calnan,* 102 Iowa, 206; *State* v. *Blake,* 36 N. J. L. 442; *Bingham* v. *Miller,* 17 Ohio, 445.) While the question under discussion might in the first instance have presented some difficulty, the statute here challenged must now be regarded as a proper exercise of the police power."

Section 30 having been constitutional when it was passed, being susceptible of a construction which would sustain its constitutionality, and its constitutionality having been acquiesced in by all parties for over fifty years,

it could not be rendered unconstitutional by reason of the *Hanover, Kent* and *Barrett cases,* which held it constitutional but at the same time erroneously placed thereon a construction which might render it otherwise.

The constitutionality of section 30 was not necessarily involved in the review of this case by the Supreme Court of the United States. As stated in its opinion, "this suit presents the question of the validity of the assessment made by taxing officers under section 30 for the year 1922." It held that a tax "imposed upon 100 per cent of the net receipts of foreign insurance companies admitted to do business in Illinois is a heavy discrimination in favor of domestic insurance companies of the same class and in the same business, which only pay a tax on the assessment of personal property at a valuation reduced to one-half of sixty per cent of the full value of the property," and therefore held that a tax so levied was invalid. This same result would be attained whether section 30 was constitutional or unconstitutional. It reversed the case and remanded it to this court "for further proceedings not inconsistent with this opinion." There is no inconsistency between that opinion and our present holding that section 30 should be so construed that when the net receipts are returned to the taxing officers they should be treated as personal property and the assessment thereon as a personal property tax subject to the same reductions for equalization and debasement and treated in exactly the same manner as the valuations upon other personal property.

While, as suggested by appellant in its opposition to the motion herein, this court has no power to make a tax assessment, and it and the superior court, from which this cause came, have power to set aside taxes which are unlawful, it has likewise, in cases like the present, the power and the duty to determine what portion of a tax, if any, is lawful, where such fact can be determined from the record. Appellant alleged in its bill herein, and both parties have

stipulated, that appellant's net receipts for the year in question, after reduction, debasement and equalization the same as other personal property, would have been $27,247 and that the tax thereon would have been $2155.24. Appellant in its brief states: "Appellant contends that if section 30 is valid, $2155.24 is the correct amount of tax which it should pay."

The decree of the superior court of Cook county herein is reversed and the cause remanded to that court, with directions to enter a decree dissolving the temporary injunction issued June 7, 1924, directing that appellant pay appellee the sum of $2155.24 together with the costs, interests and penalties thereon, if any be found legally due, and that upon such payment being made appellee be enjoined and restrained from demanding and collecting or receiving of or from appellant any amount of taxes on its net receipts in the town of South Chicago for the year 1923 in excess of the sum of $2155.24 and the costs, interest and penalties thereon, if any be legally due, and that so much of appellant's bill of complaint as relates to said sum be dismissed for want of equity.

*Reversed and remanded, with directions.*

DUNN, FARMER and THOMPSON, JJ., dissenting:

In *People* v. *Kent,* 300 Ill. 324, it was held that the tax imposed by section 30 of the act of 1869 on net receipts of foreign insurance companies was a tax on the business of insurance and not a property tax, and section 1 of article 9 of the constitution, which authorized the General Assembly to tax, among other things, insurance interests or business in such manner as it from time to time directed by general law uniform as to the class upon which it operates, was referred to as the authority justifying the tax. This view was followed in *People* v. *Barrett,* 309 Ill. 53. In those cases there was no attack on the constitutionality of section 30 as depriving foreign insurance companies of the

equal protection of the law and due process of law under either the Federal or State constitution, but the constitutional objection made to the section was that the tax was a tax upon personal property and subject to the constitutional requirement of uniformity in respect to persons and property and was regulated by the provisions of the general Revenue act. The question of the denial of due process and equal protection of the law might have been presented in the *Kent case* but was not, and nothing is said about it in the opinion. It was not presented in the *Barrett case,* which was a controversy between the city of Chicago and the board of review of Cook county, whose purpose was to compel the board of review to perform the duty imposed upon it by law in assessing the tax upon net receipts of foreign insurance companies imposed by section 30. In those cases it was distinctly held that the tax was a tax on the business of insurance—an excise. The question of discrimination was not determined or considered when the decree of the superior court of Cook county in the case now under consideration was affirmed by this court. It was held that the tax was a privilege tax for the privilege of continuing to do business in this State, which was not subject to the constitutional limitations for the levying of taxes on property, but might be exacted and levied in any manner or by any method which the legislature saw fit to adopt. (*Hanover Fire Ins. Co.* v. *Carr,* 317 Ill. 366.) The distinction between a tax imposed upon a foreign corporation for the privilege of entering a State for the transaction of business and one imposed upon a business transacted in the State is shown in the dissenting opinion in that case, which is referred to for a discussion of the question. As stated in the decision of the Supreme Court of the United States in *Hanover Fire Ins. Co.* v. *Carr,* 272 U. S. 494, reversing the judgment of this court, it is settled that foreign corporations may not do business in a State except by the consent of the State, which may exclude them

arbitrarily or impose such conditions as it chooses upon their engaging in business within the State, subject to the qualification that the State may not exact as a condition of a corporation engaging in business within its limits that the rights secured to it by the constitution of the United States may be infringed. A number of illustrations of this qualification are cited in the opinion of the Supreme Court. Answering the argument that the Federal Supreme Court must accept the construction of section 30 by the State Supreme Court, and that, since the tax levied is sustained by such construction and has been held by the State court to be an indispensable condition upon which the company may continue to do business in Illinois, the Federal court is bound by those conclusions, the court said that the interpretation put upon such a State law by the Supreme Court is binding upon the court as to its meaning, but it is not true that the Federal court, in accepting the meaning thus given, may not exercise its independent judgment in determining whether, with the meaning given, its effect would not involve the violation of the Federal constitution. Many cases were cited upholding this proposition. The court then proceeded to determine the question of the application of the equal protection clause by considering the stage at which the foreign corporation is put on a level with domestic corporations in engaging in business within the State, and held that under the law of 1919 (Laws of 1919, p. 628,) the authority granted by the Department of Trade and Commerce, for which the company paid two per cent of the gross premiums received the previous year by it, put it on a level with domestic insurance companies doing business of the same character, and that the tax imposed by section 30 of the act of 1869 was a discrimination in favor of domestic insurance companies of the same class and in the same business and was a denial of the equal protection of the laws. It was said that "under the previous decisions of the Supreme Court of Illinois, when the

net receipts were treated as personal property and the assessment thereon as a personal property tax subjected to the same reductions for equalization and debasement, it might well have been said that there was no substantial inequality as between domestic corporations and foreign corporations, in that the net receipts were personal property acquired during the year and removed by foreign companies out of the State and could be required justly to yield a tax fairly equivalent to that which the domestic companies would have to pay on all their personal property, including their net receipts or what they were invested in.  It was this view, doubtless, which led to the acquiescence by the State authorities and the foreign insurance companies in such a construction of section 30 and in the practice under it.  But an occupation tax imposed upon one hundred per cent of the net receipts of foreign insurance companies admitted to do business in Illinois is a heavy discrimination in favor of domestic insurance companies of the same class and in the same business, which pay only a tax on the assessment of personal property at a valuation reduced to one-half of sixty per cent of the full value of that property."

This court by the opinion of the majority overrules its former decisions in the *Kent* and *Barrett cases* as to the meaning of section 30 of the statute, deliberately adjudged after full consideration, not because the conclusion is reached that those decisions did not arrive at the correct meaning of the section, but because it is now determined by the supreme authority on the question that the section is unconstitutional.  The reason given for the acquiescence of the State authorities and the foreign insurance companies in the improper construction of section 30 and in the practice under it may have been regarded by the taxing authorities and the companies as a sufficient reason for such acquiescence, but it is not a sufficient reason for this court, in order to save a part of the tax, giving to the section a

construction inconsistent with its true meaning, and enforcing the law not as it was made by the legislature but as the court by an improper construction of its meaning has amended it. The Supreme Court of the United States has held the tax not to be a privilege tax, but, as was held in the *Kent case,* an occupation tax; a tax on the business; an excise. The *Kent case* holds that the general Revenue act for the assessment of personal property has nothing to do with it. The Supreme Court of the United States does not hold to the contrary. If it is an occupation tax, the rules for the assessment of property can have nothing to do with it and the provisions of the general Revenue act no application. The Supreme Court does not hold that they have any application. Its holding is, that under the practice which it is stipulated prevailed, of reducing the amount of the net receipts upon which the occupation tax was based in the same proportion as the assessed full value of property was reduced, it might have been said that there was no substantial inequality between domestic and foreign companies, but no basis appears for holding that an occupation tax imposed upon fifty per cent or thirty per cent of the net receipts of foreign companies would be fairly equivalent to the tax which domestic companies would have to pay on all their personal property, including their net receipts or what they were invested in, or would be more or less than fairly equivalent, or that the same tax imposed upon one hundred per cent of the net receipts of the foreign companies would be a heavy discrimination in favor of domestic insurance companies.

The two methods of taxation are entirely different: one based upon the valuation of property, having no reference to the business transacted; and the other upon the basis of business transacted, having no reference to the value of property. They have no common measure—no standard of comparison. There is nothing in this record to show the relation of the net receipts of foreign insurance companies

327—39

as subjects of taxation to the property of domestic insurance companies as subjects of taxation, and there is nothing to show that there was no substantial inequality as between domestic corporations and foreign corporations, for the reason that the net receipts received during the year would yield a tax fairly equivalent to that which the domestic companies would have to pay on all their personal property. The Supreme Court of the United States has held, in substance, that this court erred in holding the tax imposed by section 30 to be a privilege tax; that it is not a privilege tax but a tax on the insurance business; that the foreign insurance company, upon complying with the law of 1919 and receiving the license of the Department of Trade and Commerce, is admitted to do business in Illinois upon a level with domestic companies doing business of the same character; that the imposition upon such foreign corporations of the tax upon their net receipts imposed by section 30 in addition to the tax on their property which they must pay under the general Revenue law, while domestic insurance companies pay a tax only upon their property and none upon their net receipts, is a violation of the constitution of the United States.

The cause has been remanded to this court for further proceedings not inconsistent with the opinion of that court. We cannot comply with this mandate by overruling our former decisions and directing the rendition of a decree for a part of the tax imposed by this unconstitutional law. This tax on the business of foreign companies is not separable. The General Assembly either had power, within the limitations of the State and Federal constitutions, to pass it or it had not, and it is inconsistent with the decision of the Supreme Court to hold that it had such power.

In our opinion the decree should be reversed and the cause remanded to the superior court, with directions to make the temporary injunction perpetual.