(No. 21538.—

THE PEOPLE *ex rel.* Winifred Mathews, Petitioner, *vs.* THE BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.* Respondents.

*Opinion filed July 26, 1932.*

Duncan, J., dissenting.

J. T. Greenacre, (Allan J. Carter, Thurlow G. Essington, Leo J. Hassenauer, Thomas Mason, and Wiley W. Mills, of counsel,) for petitioner.

Thomas V. Sullivan, (Frank S. Righeimer, Ralph W. Condee, and Frank R. Schneberger, of counsel,) for respondents.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

This cause was submitted on a demurrer filed by the respondents to the original petition of the relator filed in this court for a writ of *mandamus*. The respondents are the board of education of the city of Chicago and its individual members.

The facts as alleged in the petition and admitted by the demurrer are, that the relator, Winifred Mathews, is, and since 1927 has continuously been, a duly qualified and appointed teacher in the public schools in the city of Chicago; that there was due her for wages as such teacher for the month of June, 1931, $238.75, and for each of the months of March and April, 1932, $227.50, making a total due her of $693.75; that she made due demand for the payment of the same, but the demand was refused as the city treasurer had no funds with which to pay; that her demand for a teacher's warrant was refused by reason of the resolution of the board of education adopted May 25, 1932, in which it was alleged that the issuance of such warrants, by reason of an amendment of the Revenue law just enacted, would make such warrants a medium for the payment of school taxes for educational purposes and thereby depreciate outstanding anticipation warrants payable out of such taxes which were pledged for the payment of such warrants, and that this new law was unconstitutional and in derogation of the vested rights of the holders of such anticipation warrants. This resolution also contained the following:

"Resolved by the board of education of the city of Chicago, as follows:

"Section 1. That in order to protect the owners of said tax anticipation warrants heretofore issued and sold in anticipation of the collection of the taxes levied for educational purposes for this school district and now unpaid, and to prevent the impairment of the source of payment thereof

as provided by the law in force at the time said warrants were issued and delivered, it is hereby covenanted and agreed with the holders of such tax anticipation warrants that no salary warrants of teachers and other employees for the payment of salaries will be delivered while any of said tax anticipation warrants are outstanding and unpaid, unless at the time of delivery thereof funds are on hand with the city treasurer, *ex-officio* school treasurer, with which to pay such salary warrants, and it is hereby stipulated that no salary warrants of teachers and other employees have heretofore been issued by the board of education of the city of Chicago that are now unpaid. This declaration of policy is here recorded as evidence of the intent of the board of education of the city of Chicago to faithfully observe the agreement as to source of payment of said tax anticipation warrants specifically therein set out as by the enabling statute provided.

"Sec. 2. This board of education has not been able to sell any tax anticipation warrants issued in anticipation of taxes heretofore duly levied for educational purposes since said Senate Bill 152 became effective, as the source of payment thereof is uncertain and insecure because of the right thereby given to use warrants issued for salaries of teachers and other employees in payment of taxes levied for educational purposes, the exercise of which right will reduce the amount of taxes collected in money to the detriment of the payment of such tax anticipation warrants; that such tax anticipation warrants could be sold if payment of the educational tax was not authorized to be made in warrants of teachers and other employees unless funds are on hand for payment thereof, until such tax anticipation warrants are paid. Money received from the sale of such tax anticipation warrants will be the sole source of revenue to pay salaries of teachers and other employees and other school expenses, without which no money will be available to keep the public schools open, and the emergency demands that

this board of education enter upon its records its agreement and declaration of policy not to issue warrants of teachers and other employees except as herein set out.

"Sec. 3. That in order to preserve and protect the rights of purchasers of tax anticipation warrants of the board of education of the city of Chicago hereafter issued in anticipation of the educational tax, and to prevent the impairment of the source of payment of such tax anticipation warrants as by pertinent statute provided, and as an inducement for the purchase of such tax anticipation warrants by any purchaser, it is hereby covenanted and agreed that no salary warrants of teachers and other employees for the payment of salaries will be issued unless funds are on hand with the city treasurer, *ex-officio* school treasurer, with which to pay such salary warrants while any of said tax anticipation warrants are outstanding and unpaid, and this covenant and agreement is made and entered into in consideration of the purchase of such tax anticipation warrants hereafter to be made and shall inure to the benefit of such purchasers.

"Sec. 4. That under the School law the only method of obtaining money for paying school expenses payable from the taxes levied for educational purposes before said tax is collected, other than transferring money from the working cash fund, which fund has long since been exhausted, is by selling warrants issued in anticipation of such tax and which are payable solely from the proceeds of such tax when collected, and because of such limited source of payment, even under normal business conditions, it is difficult to find purchasers for such tax warrants, and with the source of payment thereof further limited as a result of the operation of said Senate Bill 152 it will be impossible to sell such warrants unless purchasers thereof are protected against the issuance of salary warrants of teachers and other employees, and a grave emergency exists, threatening the closing of the public schools of the city of Chicago for

lack of money to pay the expenses thereof, which impels this board of education, by the adoption of this resolution, to agree with and for the benefit of purchasers of such tax warrants not to deliver salary warrants of teachers and other employees unless money is available with the city treasurer, *ex-officio* school treasurer, for payment thereof, and to bind itself and its successors in office to the faithful observance of such agreement."

This resolution was based on the opinion of a firm of lawyers who were specialists in passing on municipal and school tax anticipation warrants. In this opinion it was stated: "There is considerable doubt whether enough actual money will be collected to pay the warrants, as the teachers' orders can be used in payment of taxes. We can think of no method at the present time by which this situation can be worked out satisfactorily so that we can approve tax anticipation warrants. It looks very much as though educational financing of school districts hereafter will have to be carried on by the issuance of teachers' orders."

The city of Chicago and the school district which it constitutes, for several years last past had, and still has, more than 3,376,000 inhabitants, and more than 478,000 pupils of school age regularly attending its more than 360 public schools, in which schools more than 14,000 teachers have been, and still are, regularly employed by said board of education in teaching pupils in one or another of said public schools, and for more than a year last past have been only partly paid for their services as such teachers, and then only in tax anticipation warrants or from the proceeds of the sale of tax anticipation warrants. The present indebtedness of said board to its teachers for wages for services rendered aggregates more than $16,000,000, which is overdue and has never been paid in any form. The compensation paid to teachers in the city and school district during the last mentioned period has been proportionately much less than that paid to public school teachers in many other

large cities in the United States, although the city of Chicago is the second largest city in the United States. The legal opinion furnished to the comptroller of the city of Chicago heretofore in this opinion mentioned has had the effect of decreasing the desirability of the tax anticipation warrants and cutting off the market therefor almost entirely. The petition prayed for a *mandamus* to compel respondents to issue to the relator a warrant for services as teacher in conformity with the School act.

Prior to January 22, 1932, (the date of approval of the emergency amendment later herein set forth,) section 135 of the School law provided: "The fiscal year of the board of education shall commence on January first unless otherwise determined by the rules of the board. All moneys received by taxation for school purposes, or received from the State common school fund, or from any other source for school purposes, shall be held by the city treasurer, *ex-officio* as school treasurer, in separate funds for school purposes, subject to the order of the board of education upon its warrants signed by its president and secretary and countersigned by the mayor and city comptroller." (Smith's Stat. 1931, par. 158, p. 2654.)

The amendatory act (House Bill 39 of first special session, approved January 22, 1932, and in force under emergency section,) inserted in above section 135 the following: "When a warrant issued for the wages of a teacher or other employee is presented to said school treasurer and is not paid for want of funds, the school treasurer shall endorse it over his signature, 'Not paid for want of funds,' with the date of presentation, and shall make and keep a record of such endorsement. Such warrant shall thereafter bear interest at the rate of six percentum per annum, until the school treasurer shall notify the president of the board of education in writing that he has funds to pay such warrant, and the school treasurer shall make and keep a record of such notices, and hold the funds necessary to pay such

warrant until it is presented. Such warrant shall draw no interest after notice is given to the president of the board of education." This provision is similar to section 81, which applies to all school districts of less than 500,000 inhabitants.

An act of the first special session of the Fifty-seventh General Assembly of the State of Illinois went into effect and force under its emergency clause on May 2, 1932. This new act, known as Senate Bill No. 152, amends section 154 of the Revenue act, (Smith's Stat. 1931, chap. 120, par. 143, p. 2399,) which reads as follows:

"Sec. 154. The county revenue shall be collected in gold and silver coin, United States legal tender notes, current national bank notes, county orders and jury certificates, and in no other currency. The revenue for State purposes shall be collected in gold and silver coin, United States legal tender notes, current national bank notes and auditors' warrants, and in no other currency. The revenue for city purposes shall be collected in gold and silver coin, United States legal tender notes, current national bank notes, city comptrollers', city auditors', or city clerks' warrants or orders on the city treasurer, and in no other currency. State taxes levied for any special purpose, other than to defray the ordinary expenses of the State government, shall be collected in gold and silver coin, United States legal tender notes, current national bank notes and in no other currency. All other taxes shall be collected in gold and silver coin, United States legal tender notes and in current national bank notes, and in no other currency unless otherwise specifically provided for. As amended by act approved May 15, 1877, L. 1877, p. 171."

The amendment was by adding thereto the following: "*Provided, however,* that the taxes for the educational purposes of any school district may also be collected in the orders or warrants payable out of the educational fund for the wages of teachers and other employees of the board of

education issued under the provisions of section 81 or section 135 of 'An act to establish and maintain a system of free schools,' approved June 12, 1909, as amended, whichever such section is applicable."

It is to be noted that the only effect of this proviso was to place the orders or warrants for the wages of teachers and other employees of the board of education on a parity with city comptrollers', city auditors' and city clerks' warrants or orders on the city treasurer, which were already a medium for the payment of city taxes, and with county orders and jury certificates, which were a medium for the payment of county taxes. It is likewise to be noted that while in the resolution of the board of education above mentioned the amendment of section 154 of the Revenue law was claimed to be unconstitutional, in its brief here it is said: "It is not in violation of section 14 of article 2 of the constitution of Illinois or in violation of section 10 of article 1 of the Federal constitution."

The relator says that the amendment approved May 2, 1932, (section 154 of the Revenue act,) is repugnant to sections 132 and 134½ of the School act, and is therefore inoperative and void. The relator is not in a position to raise this question, as by the amendment the value of her warrants are enhanced. When section 154 of the Revenue act, as amended, is compared and considered together with the sections of the School act mentioned and other sections of the School act, it will be seen that the sections are not repugnant.

It is claimed by the relator that the resolution of the board of education was invalid and of no effect, while the respondents claim that the resolution and the contractual obligations therein were within the powers of the board. The resolution and the purported contracts with the holders of anticipation warrants were plain declarations of an intention to disregard the unambiguous terms of a legislative enactment. The board of education is an entity deriving

its existence and powers solely from the legislature and is bound by all legislative enactments prescribing its duties. The resolution was *ultra vires* and contrary to public policy and therefore void.

It is claimed that the amendment to section 154 of the Revenue act is in conflict with sections 132 and 134½ of the School law. By reason of the re-assessment of 1928, the extraordinary length of time consumed in making it, the disinclination of the tax-payers to pay the taxes based thereon, the failure to assess large amounts of taxable property, and for other reasons, the Chicago school fund was depleted and emergencies arose requiring the calling of special sessions of the legislature and emergency legislation to prevent the closing of the public schools, which, everyone must concede, would have been a dire calamity. As an emergency the creation of a working cash fund was authorized by section 134½. This failing to relieve the distress, by section 132 the board of education was authorized to issue tax anticipation warrants. Notwithstanding the granting of these emergency powers, in the early months of 1932 the situation confronting the legislature and the board of education with reference to the further maintenance of the Chicago schools became most acute. The board of education was without funds, and, the taxes for 1932 not having as yet been levied, had no means of procuring funds by reason of anticipation warrants. Its employees were working without pay and without being given any evidence of indebtedness by the board of education which they could utilize to relieve themselves from want and distress. In this emergency it was evidently considered by the legislature that if the tax warrants for the wages of employees were issued directly to the employee and the warrants were made more attractive to purchasers by being placed on a parity with county and city warrants as a medium for paying future taxes some relief might be obtained, and section 135 of the School act and section 154 of the Revenue

act were amended accordingly, and the employees' warrants were made interest-bearing and a medium for the payment of taxes for educational purposes.

Where it is contended that a section of a statute is in contravention of the constitution and it is susceptible of two constructions, one of which would render it constitutional and the other unconstitutional, it is the duty of the court before which the question of its constitutionality is raised to so construe the section as to uphold its constitutionality and validity if the same can be done by any legitimate rule of construction, and if the construction is doubtful the doubt will be resolved in favor of the validity of the law. (*People* v. *Newcom,* 318 Ill. 188; *People* v. *McBride,* 234 id. 146; 6 R. C. L. 78.) It has been said that the eyes of courts are never limited to the mere letter of a law, but they may look behind the letter to determine its true purpose and effect. 6 R. C. L. 81; *Hanover Fire Ins. Co.* v. *Harding,* 327 Ill. 590.

Where two statutes are enacted which have relation to the same subject, the earliest continues in force unless the two are clearly inconsistent with and repugnant to each other or unless in the latest statute some express notice is taken of the former plainly indicating an intention to repeal it, and where two acts are seemingly repugnant, they should, if possible, be so construed that the later may not operate as a repeal of the former by implication. (*Town of Ottawa* v. *County of LaSalle,* 12 Ill. 339; *People* v. *Burke,* 313 id. 576; *Village of Glencoe* v. *Hurford,* 317 id. 203; *People* v. *Goldberg,* 332 id. 346; *Walgreen Co.* v. *Industrial Com.* 323 id. 194.) It is not enough to justify the inference of repeal that the subsequent statute covers some, or even all, of the questions covered by the former. There must be an irreconcilable repugnancy. (*Kizer* v. *City of Mattoon,* 332 Ill. 545.) In construing a section of the statute to determine whether or not there is such irreconcilable repugnancy it is the duty of the court, in determining

the intent of the legislature, to consider its several parts in connection with correlated sections *in pari materia.* It is a general rule often announced in this State, that a statute will be presumed to operate prospectively, only, and will not be construed to have a retroactive operation unless the language employed is so clear that it will admit of no other construction. *People* v. *Nelson, ante,* p. 193; *People* v. *Sears,* 344 Ill. 189; *People* v. *Chicago and Eastern Illinois Railway Co.* 343 id. 101; *Jones* v. *Loaleen Mutual Benefit Ass'n,* 337 id. 431; *People* v. *David,* 336 id. 353.

The fiscal year of the board of education of the city of Chicago commences on the first day of January of each year. By paragraph 159 of the School act it is provided that the city council shall, upon the demand and under the direction of the board of education, annually levy all school taxes. By paragraph 158*a* it is provided that during the first quarter of each fiscal year the board of education shall adopt a budget and pass a resolution to be termed the "annual school budget," in and by which the board of education shall appropriate such sums of money as may be needed to defray all necessary expenses and liabilities of the board to be paid or incurred during such fiscal year. "Such annual school budget shall specify (*a*) the several organization units, purposes and objects for which appropriations are made; (*b*) the amount appropriated for each organization unit, purpose or object; and (*c*) the fund from or to which each amount appropriated is to be paid or charged, and shall include appropriations for (*a*) all current expenditures or charges to be made or incurred during such fiscal year, including interest to accrue on anticipation tax warrants and temporary loans; (*b*) all final judgments, including accrued interest thereon, entered against such board of education and unpaid at the beginning of such fiscal year; (*c*) any amount for which said board is required to reimburse the working cash fund from the educational purposes fund pursuant to the provisions of section 134½ of this

act; (*d*) all other liabilities, including the principal of all anticipation tax warrants and all temporary loans and all accrued interest thereon, incurred during prior years and unpaid at the beginning of such fiscal year; and (*e*) an amount or amounts estimated to be sufficient to cover the loss and cost of collecting taxes levied for such fiscal year and also deferred collections thereof and abatements in the amounts of such taxes as extended upon the collectors' books. * * * If, at the termination of any fiscal year or the time when the school budget for the ensuing fiscal year should have been passed as provided for in this act, the appropriation necessary for the expenditures of said board of education for such ensuing fiscal year shall not have been made, the several amounts appropriated in the last school budget for the objects and purposes therein specified, so far as the same shall relate to operation and maintenance expenses shall be deemed to be appropriated for the current fiscal year for objects and purposes, respectively, as specified in said last school budget; and until the board shall act in such behalf, the treasurer shall make the payments necessary for the support of the schools on the basis of the appropriations of the preceding fiscal year." This budget is the basis upon which the city council levies the school tax for the city of Chicago. The school tax levied, for educational purposes is not levied for educational purposes generally, but is levied for the specific purpose for which it is appropriated in the budget, and such tax can be used for no other purpose.

When anticipation warrants are issued by virtue of section 132 of the School act they are made receivable by any collector of taxes in payment of taxes against which they are issued, and such taxes against which the warrants are drawn are set apart and held for their payment. Just how this is done we are not advised, but the bill alleges that it has been done and the demurrer admits it. When such warrants are sold, the money received therefor by the city

treasurer stands in the place of the taxes in anticipation of which the warrants were issued. Such taxes, when received from a tax-payer, can only be applied to the specific purpose for which they had been appropriated and levied, and it follows that moneys received from warrants issued in anticipation of taxes can likewise only be used for such purposes. Among the specific purposes for which the school tax for educational purposes was levied was one for payment of teachers and other employees of the board, and when such tax so appropriated and levied is received either from a tax-payer or from the sale of anticipation warrants, a proportionate amount of such money must be applied to the payment of such employees. The purchaser of the tax anticipation warrants has a right to require, as a condition of the purchase, that the board of education apply the moneys received in payment of the particular purpose for which the tax was levied. This should not interfere with their sale in any degree. At the time the 1932 emergency amendments were passed many of the employees of the board of education were in dire distress, with no means of alleviation at hand. They had given their services, earned their money and did not have any evidence of indebtedness therefor from the board of education which they could convert into money or use as collateral to procure means of meeting the bare necessities of life. By this amendment the 14,000 teachers and thousands of other employees of the board were given warrants bearing interest and convertible into money, and these 14,000 teachers and other employees were converted into salesmen to reach their landlords, their grocers, their relatives and friends and thousands of philanthropic and patriotic citizens who had not, prior to this time, found opportunity of assisting in the work of relief. These warrants which they sought to convert into money or use as collateral reached a class of people who did not have the advice of experts as to tax anticipation warrants, and would not be prevented by a mere doubt from making an invest-

ment. These warrants bore interest, and their payment, with interest, was not only guaranteed by taxes to be levied therefor but by the patriotic civic pride of the second largest city of the United States.

When the amendments of 1932 were enacted the legislature was faced with an emergency which called for prompt action. It knew that the taxes levied for former years had been appropriated for purposes other than the expenditures necessarily incurred in 1932 for which appropriation had been made but for which, in the natural order of things, no taxes had been levied, and therefore no warrants in anticipation thereof could be issued and sold. The specific warrants which were to be issued under the 1932 amendment to the School law were in the very nature of things prospective. The legislature knew that warrants, if any, issued prior to that time to employees were not a medium for the payment of school taxes. It knew that when the board of education sold warrants in anticipation of certain taxes and segregated those taxes, the holder of those warrants had a right to insist that those taxes be paid in the medium prescribed by law at the time of such sale. The emergency which confronted the legislature in 1932 was an emergency as to anticipating the taxes of 1932 and of meeting similar emergencies in future years. It is only reasonable to suppose that when these employees' warrants were made prospective it was the intention of the legislature that the taxes for which they were to be received as payment were prospective taxes, only—*i. e.,* the taxes of 1932 and succeeding years—and that it was not the intention of the legislature that any such employees' warrants should be used for the payment of the taxes of 1931 or for any preceding year. When these amendments are construed *in pari materia* with the other provisions of the School law and Revenue law, we find no irreconcilable conflict between them and it does not follow that because employees' warrants are made a medium for paying school taxes levied for educa-

tional purposes their issuance will have a tendency to impair the obligation of the tax anticipation warrants.

When the taxes of 1932 shall have been levied, these employees' warrants will be an indebtedness of the board of education for which those taxes were levied. Anticipation warrants can be issued to meet that indebtedness. These employees' warrants are registered with the city treasurer, and it is his duty, under the law authorizing the issue of such warrants, whenever he has sufficient money in his hands to pay the same, to take measures to retire them, and in this manner the large portion of these warrants may be retired before they can be utilized as a medium for paying the school taxes of 1932. The use of city and county orders and jury certificates as a medium for the payment of city and county taxes under the statute before its amendment does not seem to have interfered at all with the sale of tax anticipation warrants by the city or county, and we can see no valid reason why the school employees' warrants should do so.

The question involved in this case is very simple, and were it not for the doubt and uncertainty in the minds of many as to questions not directly connected with the issue in this case but collaterally related thereto, and which, in view of the gravity of the situation in its humanitarian aspect, seem to require consideration, this case might have been decided in few words.

The relator was employed by the board of education as a teacher at a fixed salary. She performed satisfactory services. Those services were not remunerated. The board of education had no funds with which to pay her. Respondents refused to issue her a warrant for her wages as such teacher so that the same might be endorsed by the school treasurer, over his signature, "Not paid for want of funds," with the date of presentation. It was their duty to have done so. The relator is entitled to a writ of *mandamus* commanding them to perform that duty.

The demurrer of respondents to relator's petition for *mandamus* is overruled and the writ of *mandamus* awarded as prayed for in the petition.

*Writ awarded.*

Mr. JUSTICE DUNCAN, dissenting:

I do not agree with that portion of the opinion which holds that these teachers' warrants can be used for the payment of the 1932 taxes.