(No. 13855.—Reversed and remanded.)
THE PEOPLE *ex rel.* The City of Chicago, Appellant, *vs.*
CHARLES F. KENT, Appellee.

*Opinion filed December 22, 1921.*

1. TAXES—*tax on net receipts of foreign insurance company is a tax on the business of insurance.* The tax imposed on the net receipts of foreign insurance companies doing business in Illinois, under section 30 of the act of 1869, (Hurd's Stat. 1917, p. 1701,) is a tax on the business of insurance as shown by the amount of net receipts for the entire year and is not a personal property tax under the Revenue law on the amount of net receipts on hand on the first day of April. (*People* v. *Cosmopolitan Fire Ins. Co.* 246 Ill. 442, explained.)

2. SAME—*legislature may determine method of taxing foreign insurance companies.* The legislature has power to tax foreign insurance companies either by requiring the payment of a fixed annual sum into the State treasury, or by assessing property actually held or owned, or by taxing the business transacted as shown by the net receipts during the year.

3. CORPORATIONS—*legislature may restrict or prevent the transaction of business by foreign corporations in Illinois.* Foreign corporations are permitted to do business in Illinois only upon the terms and conditions and under the restrictions imposed by the legislature, and the legislature has the power to prohibit them from doing any business in the State.

4. MANDAMUS—*performance of legal duty imposed upon corporation may be compelled by mandamus—taxation.* Mandamus is the ordinary method of compelling the performance of a specific legal duty imposed by statute upon a corporation and is a proper remedy to compel the performance of a legal duty imposed in connection with the assessment and collection of taxes.

5. SAME—*mandamus may be allowed although another remedy is available.* The writ of *mandamus* will be allowed where it will afford a proper and sufficient remedy, even though the petitioner may have another specific legal remedy.

6. INSURANCE—*agent of foreign corporation may be compelled by mandamus to make return of net receipts for taxation.* Mandamus will lie to compel the agent of a foreign insurance company doing business in Illinois to make return of the net receipts of the agency to the proper officers for taxation, as required by section 30 of the act of 1869; (Hurd's Stat. 1917, p. 1701;) and where the

agent has failed to make the return to the assessors in the time required by the statute he may be compelled to make the return subsequently to the board of review, as the duty is a continuing one and is not abrogated by the failure to perform it at the proper time.

APPEAL from the Circuit Court of Cook county; the Hon. FRANK JOHNSTON, JR., Judge, presiding.

SAMUEL A. ETTELSON, Corporation Counsel, and BULKLEY, MORE & TALLMADGE, for appellant.

EKERN & MEYERS, and DAVID K. TONE, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

On July 20, 1920, a petition was filed in the circuit court of Cook county in the name of the People, on the relation of the city of Chicago, against Charles F. Kent, averring that he was the agent of nineteen foreign insurance companies, which were named; that his agency and place of business were in the city of Chicago, in Cook county, and each of the insurance companies of which he was agent was doing business in the State of Illinois through his agency for the year prior to April 30, 1920, and was subject to taxation on the net receipts of his agency; that he had neglected and refused to make returns of the receipts of his agency and stated that he did not intend to do so. The petition averred that the books of the board of assessors had been passed over to the board of review, and prayed that the writ of *mandamus* issue against the respondent commanding him to make the return to the board of review. The respondent demurred to the petition, his demurrer was sustained, the petition was dismissed and the relator has appealed.

The action was founded upon section 30 of the act of 1869, "to incorporate and govern fire, marine and inland navigation insurance companies doing business in the State of Illinois." (Hurd's Stat. 1917, p. 1701.) That section is as follows: "Every agent of any insurance company,

incorporated by the authority of any other State or government, shall return to the proper officer of the county, town or municipality in which the agency is established, in the month of May, annually, the amount of the net receipts of such agency for the preceding year, which shall be entered on the tax lists of the county, town and municipality and subject to the same rate of taxation, for all purposes,—State, county, town and municipal,—that other personal property is subject to at the place where located; said tax to be in lieu of all town and municipal licenses; and all laws and parts of laws inconsistent herewith are hereby repealed: *Provided,* that the provisions of this section shall not be construed to prohibit cities having an organized fire department from levying a tax, or license fee, not exceeding two per cent, in accordance with the provisions of their respective charters, on the gross receipts of such agency, to be applied exclusively to the support of the fire department of such city."

This section imposed on every foreign insurance company doing business in this State a tax different in kind from the ordinary personal property tax provided for by the general Revenue law, which requires personal property to be listed and assessed with reference to the quantity held and owned on the first day of April in each year, to be assessed at a certain percentage of its full value and to be equalized by the board of review. The tax has no reference to the amount held and owned on the first day of April or any other day. It refers to net receipts throughout the year, only a small part of which,—perhaps none,—would be held or owned in this State on the first day of April. No provision is made for the assessment of such net receipts at less than their actual amount or their equalization with other property. On the contrary, it is directed that the amount of such net receipts shall be entered on the tax lists and subject to the same rate of taxation as other personal property. The tax is not levied on the property of

the corporation by valuation but on the net receipts of its business. The legislative authority for such a tax not by valuation is found in the enumeration in section 1 of article 9 of the constitution of certain objects and subjects of taxation, among which are insurance interests or business, which may be taxed by the legislature in such manner as it shall from time to time direct by general law uniform as to the class on which it operates.

The net receipts for the year are not subject to taxation under the general Revenue act, which refers only to such property as has a *situs* in the State. That act authorizes the listing and taxation only of such part of the net receipts as is on hand or in banks in the county on April 1 of each year, but does not authorize the taxation of net receipts which may have been absorbed by losses or transmitted to the home office of the company in another State before April 1. (*Fidelity and Casualty Co.* v. *Board of Review,* 264 Ill. 11.) Such part of the net receipts is taxable, not as and because it is net receipts but as and because it is cash on hand. The effect of this decision is, that if section 30 is given the plain meaning of its language, the tax on annual net receipts is not a property tax but a tax on the business of insurance. The case of *National Fire Ins. Co.* v. *Hanberg,* 215 Ill. 378, decided only that the "net receipts," as used in section 30, meant gross receipts less operating expenses, and did not authorize the deduction of fire losses. In that case the insurance company filed a bill against the county collector for an injunction against the collection of all tax extended on assessment of its net receipts under section 30 in question here. It was not possible to determine how the board of review arrived at the amount of the assessment, but as on the complainant's own showing the amount of its net receipts was greater than the amount of the assessment unless it was entitled to deduct fire losses, the consideration of the case was limited to that one question. The bill was dismissed but it was not decided

that the method of assessment was right. In the case of *People* v. *Cosmopolitan Fire Ins. Co.* 246 Ill. 442, it was stated that "the net receipts are personal property and are to be listed by the board of assessors and board of review and taxed the same as other property." This statement referred to the rate of taxation and was in accordance with section 30, which directed that the net receipts should be entered on the tax lists and subject to the same rate of taxation that other personal property is subject to. It did not refer to the character of the tax, the manner of its collection or the question of assessment.

Net receipts are, of course, personal property and a tax on net receipts a personal tax. Every tax on property in the State of Illinois is required by the constitution to be based upon a valuation to be made by some person or persons to be elected or appointed in such manner as the General Assembly shall direct, and the requirement of the statute is that every tax-payer shall furnish a schedule to the assessor of his taxable personal property, which it is made the duty of the assessor to appraise, and all property in the State must be listed and assessed to the owner with reference to the quantity held or owned on the first day of April. These regulations have no application to the tax in question here. Instead of referring to the quantity held or owned on April 1 reference is made to the total amount of the net receipts for the year ending April 30,—and this not as the subject matter of assessment but as the basis for computing the tax required to be paid by the insurance company; not on its property or on its profits but upon the amount of its business.

Foreign insurance companies enjoy important privileges in the State by the exercise of which they receive large sums of money. Their business interests are very extensive and they should contribute to the public burdens. Their physical property held or owned in the State is of slight value compared with the amount of the income de-

rived from their business. This income is not held within the State for any considerable time and at the date fixed by law for the assessment of property for taxation none of it may be so held. Different modes of taxation have been adopted in different States at various times. In some cases a fixed annual sum has been required to be paid into the State treasury; in others an assessment of property actually held or owned; and in others the amount of business transacted by the corporation has been made the basis of taxation. The statute in question here did not require the payment of a fixed sum, but adopted as a basis for taxation not the property of the corporation, not the net receipts on hand at a particular day or the number of policies issued or the value of property insured, but the total net receipts of the corporation for the year, regardless of the amount of losses incurred or the manner in which those net receipts have been invested or paid out or whether they are held by the corporation within the State or elsewhere. The existence of power in the legislature to adopt any of these methods is beyond doubt, and it rests with the legislature to determine what method shall be adopted. *Society for Savings* v. *Coite,* 6 Wall. 594.

Under the constitution of 1818, which did not expressly authorize the legislature to tax insurance companies as does the present constitution, but provided in section 20 of article 8 "that the mode of levying a tax shall be by valuation, so that every person shall pay a tax in proportion to the valuation of the property he or she have in his or her possession," it was held that a law which required all agents of foreign insurance companies to pay over three per cent on the amount of premiums charged on all policies issued, to the clerk of the county commissioners' court, to be paid to the treasurer of the State as revenue to the State, did not violate the constitutional provision. It was held that "this is not a tax upon property but is a burden imposed upon the agent for the right of exercising a franchise or

privilege and which the legislature would have the right to withhold or inhibit altogether, and the amount of premiums charged is merely used as a mode of computing the amount to be paid for the exercise of the privilege. The legislature might have adopted as a mode of computing the amount the value of the property insured, and in that event it could hardly be said to be a tax upon that property; or the mode of computation might have been the number of policies issued or risks taken, without regard to the premiums charged, and then what would the tax have been upon? It will be observed that the law in question only applies to agents of foreign insurance companies, and it would be strange, indeed, if the legislature had not the power to prescribe the terms upon which foreign corporations should be permitted to come into this State and carry on their business, or even to prohibit them altogether." (*People* v. *Thurber,* 13 Ill. 554.) This decision was followed since the adoption of the present constitution, in *Walker* v. *City of Springfield,* 94 Ill. 364.

The main question in the case is whether an agent of an insurance company incorporated by the authority of another State or government and doing business in this State can be compelled by *mandamus* to make the return of the amount of net receipts of his agency required by section 30. The circuit court held that *mandamus* would not lie because the duty sought to be enforced against the appellee was not a public duty of an official character, and that he was not an official against whom the writ would lie, as he was not exercising any part of the sovereign right of the State.

The insurance companies represented by the appellee being foreign corporations, are permitted to do business in this State only upon the terms and conditions and under the restrictions imposed by the legislature, which has the power entirely to prohibit them from doing any business in the State or to grant them that privilege upon such terms as it sees fit. Before any foreign corporation is authorized

to do business in the State it must obtain from the Department of Trade and Commerce a license, which expires on the 30th day of June after its date but may be renewed upon compliance with the laws of the State.  By section 22 of the act of 1869 it is made unlawful for any agent to transact business for any foreign insurance company without procuring a certificate of authority stating that such company has complied with all the requisitions of the act. One of the duties imposed by the act is the making of the return required by section 30.  The ordinary method for compelling the performance of á specific legal duty imposed by statute upon a corporation is by the writ of *mandamus.* It is the proper remedy to compel a railroad company to build a fence along its right of way;  (*Ohio and Mississippi Railway Co.* v. *People,* 121 Ill. 483;)  to compel a railroad company to perform its statutory duty to construct a farm crossing;  (*State* v. *Chicago, Madison and Northern Railroad Co.* 79 Wis. 259;)  to compel a railroad company to deliver grain at a warehouse reached by its track; (*Chicago and Northwestern Railway Co.* v. *People,* 56 Ill. 365;)  to compel the officers of a corporation to call a special meeting of the stockholders when required in accordance with the provisions of the by-laws.  *Bassett* v. *Atwater,* 65 Conn. 353.

"The jurisdiction by *mandamus* over private corporations is of ancient origin and is well established.  It is exercised both in England and America for the enforcement of corporate duties and to compel the proper exercise of corporate functions in cases where the law affords no other adequate or specific remedy, and the writ of *mandamus* may now be regarded as the most efficient means by which the common law courts control the operations of civil corporations aggregate, both to compel the observance of the ordinances of their constitution and to enforce a just recognition of the rights of their members in the exercise of the corporate franchise.  It may be laid down as a general

rule governing the exercise of the jurisdiction in question, that where a specific duty is imposed by law upon a private corporation and no other adequate or specific remedy is provided for its enforcement the writ of *mandamus* will be granted; and the effect of the writ in such cases is to compel the corporate authorities to take the necessary steps for performing the duty required in the manner provided by law, since the mandate of the court necessarily implies that the act to be performed shall be done in a legal manner." (High on Ex. Legal Remedies,—2d ed.—secs. 276, 277.)

*Mandamus* is a proper remedy to compel a corporation or its officers to perform a specific legal duty imposed upon them by statute in connection with the assessment and collection of taxes against the corporation or its stockholders. (*Satterwhite* v. *State*, 142 Ind. 1.) A corporation may be compelled by *mandamus* to permit an inspection of books and papers by the proper public officer for the purpose of ascertaining and listing its property subject to taxation. (*State* v. *Workingmen's Building Ass'n*, 152 Ind. 278.) It will also lie to compel the officers of a corporation to answer questions for the purpose of determining whether property has been omitted from taxation. (*Satterwhite* v. *State, supra.*) Where a statute made it the duty of the president or other proper officer of a banking corporation to set aside out of the dividends or profits of the bank the amount of tax levied upon its stock and pay this amount into the treasury of the State, it was held that an appropriate case was presented for the aid of *mandamus* upon the refusal to perform this duty. (*State* v. *Mayhew*, 2 Gill, 487.) *Mandamus* requiring the president of an insurance company to return a list of the stockholders and their places of residence, with the amount of stock held by each, was held to be the appropriate remedy to compel compliance with a statute requiring the furnishing of such list to the appeal tax court. (*Firemen's Ins. Co.* v. *Baltimore*, 23 Md. 296.) So the writ of *mandamus* was held to be the proper

remedy to compel corporations owning steamboats and other water craft to furnish certified lists of the amount of freight and the number of passengers passing through the locks, as prescribed by statute. (*Board of Canal Comrs.* v. *Willamette Transportation Co.* 6 Ore. 219.) A statute of the State of Michigan made it the duty of the officers or agents of any insurance company doing business within the State and incorporated under its laws to cause its books to be opened for the inspection of persons appointed by the Secretary of State to make inspection of the books and affairs of such company. *Mandamus* was held to be the proper remedy to compel a submission to such inspection and examination, the court saying: "We understand the general rule to be, that where a statute imposes a specific duty, either in express terms or by fair and reasonable implication, and there is no other specific and adequate remedy, the writ of *mandamus* may be awarded to compel performance of the duty." (*People* v. *State Ins. Co.* 19 Mich. 392.) Under our statute the writ of *mandamus* will be allowed where it will afford a proper and sufficient remedy, even though the petitioner may have another specific legal remedy.

The statute required the return to be made in the month of May. The board of assessors is required to complete its work on or before July 1. The petition was not filed until July 20, and prays that the return may be made to the board of review instead of the board of assessors, and it is insisted that the writ was therefore properly denied. The duty to make the return to the proper officer was not abrogated by the failure to perform it at the proper time but continued after the expiration of the limit fixed by law for its performance. The expiration of the time for the completion of its work by the board of assessors and the delivery of its books to the board of review did not absolve the respondent from the duty but he was still under obligation to make the return to the proper officer, and

the proper officer was the body having the duty of making the assessment at the time of making the return. The duty of the respondent was a continuing one and might be enforced by *mandamus* though the statutory period within which it should have been made had expired. (*People* v. *Lueders,* 287 Ill. 107; *State Board of Equalization* v. *People,* 191 id. 528.) Whether the proper officer would be bound by the return or obliged to accept or act upon it is a matter with which the respondent is not concerned. It was his duty to make the return without regard to the action which may be taken by the board of review.

The appellee contends that a compliance with the writ of *mandamus* would have the effect of incriminating or tending to incriminate him and subject him to the penalties imposed by the act for a failure to make the return in the month of May, and therefore, under the constitutional provision which protects all persons from being compelled in any criminal case to give evidence against themselves, he should not be obliged to make the return. The specific objection is stated by the appellee as follows: "If the court should issue a writ of *mandamus* commanding said Charles F. Kent to file a return to the board of review the return will automatically show the neglect of said Charles F. Kent to file the return in the month of May, as provided by section 30 of the act of 1869, and would, of itself, be sufficient proof to establish the action in debt and make him liable for penalties above set out." The return in obedience to the writ would not show that a return had not been made in May, and being made under compulsion would not constitute an admission that the return had not been made in May. Under the averments of the petition it is the legal duty of the appellee to make the return. If he had not admitted by his demurrer his failure to make the return the appellant would have been obliged to prove such failure. If it had been proved the appellant would have a right to the writ of *mandamus.* It is equally en-

titled to the writ when the appellee by his demurrer admits the facts.

The petition shows a clear right to the writ. The court erred in sustaining the demurrer to it, and its judgment will be reversed and the cause will be remanded.

*Reversed and remanded.*