## CONCORDIA FIRE INSURANCE CO. *v.* ILLINOIS.

No. 12. Argued October 11, 12, 1933.—Decided June 4, 1934.

536

*Mr. George Wharton Pepper,* with whom *Messrs. William B. Bodine, Frederick D. Silber,* and *Herbert W. Hirsh* were on the brief, for appellant.

*Mr. Hiram T. Gilbert,* with whom *Messrs. Leon Horn-stein* and *Harris F. Williams* were on the brief, for appellee.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This was an action of debt brought by the State of Illinois, in a court of that State, against the Concordia Fire Insurance Company, to recover taxes levied on the net receipts of the latter from its insurance agencies in Cook County, Illinois, during annual periods ending April 30 in each of the years 1923–1927. The defendant interposed a plea of *nil debet.* The cause was heard by the court without a jury under a stipulation entitling the defendant to introduce any evidence which would be admissible in equity under appropriate pleadings, and enabling the court to give effect to equitable principles and render judgment in conformity to the evidence. The court found the issues for the defendant and gave judgment accordingly. The Supreme Court of the State disapproved that judgment and in its stead entered one awarding the plaintiff a recovery of smaller taxes than were claimed for the years ending April 30 in 1923–1926 and of the full tax claimed for the year ending April 30 in 1927. 350 Ill. 365; 183 N.E. 241. The defendant then sought and was allowed an appeal to this Court— the ground for the appeal being that the state court overruled the defendant's claim that the state statute, under which the taxes were levied, when construed and applied as sustaining them (it was so construed and applied by that court), conflicts with the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

The defendant is a Wisconsin insurance corporation and, conformably to its charter and to licenses from Illi-

nois, has been engaged for several years in conducting in Cook County in the latter State the business of insuring against fire, marine and inland navigation risks and various so-called casualty risks. Its receipts from that business consisted only of premiums received on policies issued.

The taxes in question were levied under § 30 of a statute of March 11, 1869,[1] entitled "An Act to incorporate and to govern fire, marine and inland navigation insurance companies doing business in the State of Illinois." Several sections of the act relate to the creation and regulation of domestic corporations, and others relate to the licensing, taxing, etc., of foreign corporations. Section 30 provides in respect to foreign corporations doing business in the State that in the month of May, annually, " the amount of the net receipts " of their local agencies shall be entered on the local tax lists and be " subject to the same rate of taxation for all purposes, state, county, town and municipal, that other personal property is subject to at the place where located."

Throughout the years 1923–1927, and before, it was the uniform practice of officers and boards engaged in listing and assessing personal property for taxation to treat and list 60% of the fair cash value as the " full value "; and in the years 1923–1926 these officers and boards, pursuant to the direction of a statute of 1919,[2] treated and listed one-half of such " full value " as the " assessed value." By these processes 30% of the fair cash value uniformly was made the basis of personal property taxes in 1923–1926.[3] The same processes were applied in respect of real property. In 1927, before the

---

[1] Ill. Laws 1869, 209, 228; Ill. Laws 1874, 179; Cahill's Ill. Rev. Stat., c. 73, § 159.

[2] Act June 30, 1919; Ill. Laws 1919, p. 727.

[3] *Hanover Fire Ins. Co.* v. *Harding,* 327 Ill. 590, 594–595.

assessments of that year were completed, the statute directing that 50% of the listed " full value " be taken as the assessed value was repealed,[4] and therefore was not applied in making assessments in that year. But the practice of taking 60% of the fair cash value as the true value was continued and applied in the assessments of that year as it had been in those of earlier years.

In the years 1923–1926 the defendant made returns of its net receipts from fire, marine and inland navigation insurance. The amounts so returned were accepted by the assessing officers as correct, but were not scaled down to 60% or further reduced to one-half of 60%, as was done in the assessment of other property. On the contrary, taxes were levied on the full amounts reported in the returns.

In 1927 the defendant made a return of its net receipts from fire, marine and inland navigation insurance, the amount reported being $76,291.00. It arrived at this amount by deducting operating expenses from gross receipts, the former being treated in the computation as 54% of the latter. On this basis its gross receipts were $165,850.00.[5] The amount returned as net receipts was accepted as correct by the board of assessors of the county and 50% thereof was listed by that body as the assessed value. But that assessment, as will appear presently, was not approved by the next superior body, the board of review of the county.

In November, 1927, the defendant was cited by the board of review to appear before it on December 15 at a hearing on a proposed reassessment of the net receipts in the years covered by the returns of 1923–1926, and also on a review of the assessment by the board of assessors

---

[4] Act July 7, 1927; Ill. Laws of 1927, p. 745; Cahill's Ill. Rev. Stat. 1933, c. 120, §§ 328, 329.

[5] In one of the briefs this amount is given as $165,670.00.

of the net receipts in the year covered by the return of 1927. The defendant appeared in response to the citation, and in view of the importance which has been given to the hearing it will be described at some length.

At the hearing the defendant had full opportunity to support and supplement its returns by a further showing respecting its gross receipts and the deductions rightly to be made in determining the net receipts. But it chose to stand on its returns and made no additional showing. It freely conceded that the returns included receipts from fire, marine and inland navigation insurance but not from casualty insurance. And it also conceded that the deductions made by it in computing the net receipts included some items, such as overhead expenses and reinsurance costs, the deduction of which had been and still was the subject of diverging opinions.

A full report of the hearing before the board was produced in evidence at the trial of this cause and is set forth in the record. The report shows that—apart from a controversy over the construction and constitutional validity of the taxing statute—the matters brought to the board's attention were (1) defendant's failure to include and state separately in its returns the receipts from casualty insurance; (2) defendant's failure to specify with greater particularity the expenses deducted by it in computing the net receipts; (3) a contention that the receipts from casualty insurance should be included in the computation of the taxable net receipts; and (4) a contention that the deductions made for operating expenses were excessive.

One participant in the hearing, who had investigated and studied the matter, made evidential statements to the board tending to show that the defendant's receipts from fire, marine and inland navigation insurance were about 75% of its total receipts, the remainder coming from casualty insurance, and that the operating expenses of an

insurance business like that of the defendant in Cook County averaged about 30% of the gross receipts. These statements, although informal, were of such a nature that, under repeated rulings of the Supreme Court of the State, the board could consider them and give some weight to them—particularly as the defendant presented no showing to the contrary beyond referring to its returns which were meager and practically silent on the points to which the statements were directed.

Because of a contention which will be noticed later on it should be stated in this connection that in the hearing before the board the defendant neither claimed that losses paid to policy holders should be deducted in determining net receipts nor presented any showing or statement of the amount of such losses.

After the hearing the board made corrected assessments of the net receipts for the years covered by the returns of 1923–1926; but as the Supreme Court of the State held this action of the board was of no effect, save as it brought the original assessments forward and attached them to the 1927 roll without affecting their original validity or force, the corrected assessments do not require further notice.

Coming to the net receipts for the year ending April 30, 1927, the board fixed their amount at $121,550.00, instead of $76,291.00 as stated in the return; and without scaling or debasing the amount so fixed the board listed it as their assessed value.

The record makes it plain that the board in fixing the net receipts for that year at an amount much larger than was stated in the return proceeded on the theory and conviction that the receipts from casualty insurance, which were omitted from the return, should be included in computing the taxable net receipts, and that the deductible operating expenses, which the defendant had regarded as 54% of the gross receipts, were only about 30% of such receipts.

In *Hanover Fire Ins. Co.* v. *Harding*, 327 Ill. 590; 158 N.E. 849,[6] which preceded the decision in the present case about five years, the Supreme Court of the State in considering and applying § 30 now in question ruled that the reductions, by scaling and debasement, applied in the assessment of other personal property should be applied to net receipts of foreign insurance corporations; and on that ground the court condemned a tax of $7,184.18, where such reductions were not made, and awarded a recovery of $2,155.24, which would have been the tax had the net receipts been reduced like the value of other personal property. In stating the reason for its ruling the court said (pp. 601–602):

"Section 30 provides that ‘net receipts shall be subject to the same rate of taxation . . . that other personal property is subject to at the place where located.’ The use of the word ‘other’ indicates that the net receipts were to be considered as personal property and treated the same as other personal property. Clearly, this provision means that not only the percentage of the rate but the basis of the valuation shall be the same. Taxing by a uniform rule requires uniformity not only in the rate of taxation but also uniformity in the mode of the assessment upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation, and this equality of burden cannot exist without uniformity in the mode of the assessment as well as in the rate per cent of taxation. (*Green* v. *L. & I. R.R. Co.*, 244 U.S. 499; *Boyer* v. *Boyer*, 113 *id.* 889; *Cummings* v. *National Bank*, 101 *id.* 153; *Exchange Bank* v. *Hines*, 3 Ohio St. 1.) Section 30 and the law of 1898 [7] should be construed together, and

---

[6] This was the second decision of that court in the case. An earlier decision reported in 317 Ill. 366; 148 N.E. 23 had been reversed in 272 U.S. 494 and the case had been remanded for further proceedings.

[7] Sections 17 and 18 of the Act of February 25, 1898, Ill. Laws 1898, p. 32, directed assessing officers to take one-third of the listed

when the net receipts are placed upon the tax list they are to be treated as personal property valuation, and are to be scaled, debased and treated the same as other personal property by the taxing officials."

In that connection the court approvingly quoted from its decision in *People* v. *Cosmopolitan Fire Ins. Co.*, 246 Ill. 442, 448; 92 N.E. 922, as follows:

" The net receipts are personal property and are to be listed by the board of assessors and board of review and taxed the same as other property."

In the present case that court in dealing with the original assessments made in 1923–1926, after the returns in those years were received, said (350 Ill. 372; 183 N.E. 241):

" Such returns were received and accepted as correct by the assessor, acted upon by the taxing bodies and the taxes extended thereon. The taxes extended were not legal, for the reason that the amounts returned as net receipts were not scaled and debased as the returns of other personal property were in the extension of the taxes."

But while the court ruled that the taxes so extended were not legal, it referred to the stipulation whereby judgment was to be rendered in conformity with the evidence and equitable principles, and held that the plaintiff, while not entitled to recover all that was extended, was entitled to a judgment for what would have been due had the net receipts been " scaled and debased in conformity with the assessments on other personal property " and had the taxes been computed and extended on the resulting assessments.

Respecting the tax on net receipts for the year ending April 30, 1927, that court considered several objections,

---

" full value " as the " assessed value." These sections were amended June 30, 1919, Ill. Laws 1919, p. 727, by changing " one-third " to " one-half."

not material here, which were urged against the action of the board of review and pronounced them not well grounded. It then sustained the assessment as a valid one, held that equity and good conscience required that the tax be paid, and included the full amount in the recovery awarded the plaintiff. Nothing was said in the opinion about the failure of the board of review to scale the net receipts down to 60% of their value, as was done in assessing other property, nor was there mention of anything which could cure that departure from the general practice or render it of no significance. The matter was plainly presented on the record, and the full tax could not have been sustained without resolving it against the defendant. So the conclusion is unavoidable that it was so resolved, although not given distinct mention.

From the outset the defendant has insisted as part of its defense that the taxing act, if construed and applied as sustaining the taxes in question, denies to it the equal protection of the laws contrary to the prohibition of the Fourteenth Amendment. This appears in the stipulation under which the case was tried, in the opening statement of counsel at the trial, and elsewhere in the record. The Supreme Court, in the opinion, recites that this contention was made, and disposes of it by saying that a like contention was considered and overruled in *Hanover Fire Ins. Co.* v. *Harding*, 327 Ill. 590; 158 N.E. 849; and *People* v. *Franklin National Ins. Co.*, 343 Ill. 336; 175 N.E. 431.

Of course the question in this Court is whether the act as applied by the state court in this case arbitrarily and prejudicially discriminates against the defendant and in favor of others in circumstances fairly admitting of equal treatment. The particulars in which it is claimed that the act works such a discrimination will be taken up separately.

■ It is said that the act as it was applied to the net receipts of 1927 subjects the personal property of a foreign fire insurance corporation to a tax based on its full actual value whereas other personal property is taxed on a basis of 60% of its value. The complaint is not that the net receipts were valued excessively, but that the value when determined was not debased like that of other personal property. The tax, as extended on the full actual value fixed by the board of review, was $5,895.19. Had that value been debased to 60%, as was the value of other personal property, the tax would have been $3,537.11, making a difference of $2,358.08. The act deals specially and only with the taxation of net receipts of foreign fire, marine and inland navigation insurance corporations. The assessing officers acted in virtue of it and the state court held their action was valid under it. Thus both applied it, and they applied it as subjecting the net receipts of a foreign fire insurance company, by reason of being such, to a tax burden 66⅔% greater than that laid on other personal property. No reasonable basis for such a discrimination is suggested and none is perceived. It is essentially the same character of arbitrary and prejudicial discrimination that was condemned as a denial of the equal protection of the laws in *Hanover Fire Ins. Co.* v. *Harding,* 272 U.S. 494.

Whether a state statute is valid or invalid under the equal protection clause of the Fourteenth Amendment often depends on how the statute is construed and applied. It may be valid when given a particular application and invalid when given another. Here the application which was made of § 30 in respect of the taxation of the net receipts of 1927, *i.e.,* the application made by the assessing officers and sustained by the Supreme Court, brought the section into conflict with the prohibition of that clause. This means that as so applied it is invalid, notwithstanding its validity in some different applications.

By way of excusing the failure to debase it is said that something else was done which was a practical equivalent. But careful consideration of the asserted excusing action shows that it neither did nor could operate as a practical equivalent or rectify the material omission sought to be excused. Effect must be given to the board's recorded action in fixing the net receipts at $121,550. This is the amount which should have been debased to 60% to put the net receipts on a plane with other property.

■ It is said that § 30 works an unreasonable discrimination against the foreign corporations named therein in that it taxes their net receipts without permitting in the computation of such receipts a deduction of paid insurance losses, whereas competing domestic corporations are taxed only on what remains of their receipts on April 1 of each year after insurance losses, as well as operating expenses, are paid. But the defendant is not in a position to press this claim. Neither in its return nor in the hearing before the board of review did it make any showing respecting paid insurance losses or ask that such losses be deducted in arriving at its net receipts. The amount of these receipts—whether one sum or another—was primarily, at least, to be determined by the assessing officers. And as the matter was not presented to them it was not admissible, according to the decision of the Supreme Court, for the defendant to make it a ground for asking the court to reject or revise their finding respecting the amount of the receipts.

■ It is said that § 30 arbitrarily discriminates against foreign fire, marine and inland navigation insurance corporations and in favor of competing domestic corporations, in that it taxes the net receipts of the former, while the latter are not subjected to such a tax or to any equivalent tax. It appears to be conceded that no tax is laid directly on the net receipts of the domestic corporations; but it is denied that those corporations are not subjected to an equivalent tax.

For a long period the Supreme Court of the State ruled that the tax imposed by § 30 was a property tax; later on it ruled that the tax was an occupation or privilege tax; and still later it returned to its first ruling. In *Hanover Fire Ins. Co.* v. *Harding*, 272 U.S. 494, this court in sustaining a claim that the section, when applied according to the second ruling, was in conflict with the equal protection clause of the Fourteenth Amendment said (p. 516) :

" Under the previous decisions of the Supreme Court of Illinois, when the net receipts were treated as personal property and the assessment thereon as a personal property tax subjected to the same reductions for equalization and debasement, it might well have been said that there was no substantial inequality as between domestic corporations and foreign corporations, in that the net receipts were personal property acquired during the year and removed by foreign companies out of the State, and could be required justly to yield a tax fairly equivalent to that which the domestic companies would have to pay on all their personal property, including their net receipts or what they were invested in."

Counsel differ as to whether that statement was necessary to the decision of the case in hand. Be this as it may, the statement recognizes that substantial equality and fair equivalence are important factors in determining the presence or absence of arbitrary discrimination in such situations; and in this respect the statement is in accord with repeated decisions of this Court. Mathematical equivalence is neither. required nor attainable; nor is identity in mere modes of taxation of importance where there is substantial equality in the resulting burdens.

By reason of the presumption of validity which attends legislative and official action one who alleges unreasonable discrimination must carry the burden of showing it. This has not been done as respects the claim now being considered. The defendant recognizes that the domestic

corporations are subjected to some taxes not laid on the foreign corporations, a capital stock tax apparently being one. But the full situation is not shown; nor is it reflected in the opinion of the Supreme Court or the cases there cited. For aught that appears it may be that taxes not applied to the foreign corporations are laid on the domestic corporations which are the substantial equivalent of the net receipts tax. For these reasons this claim of discrimination must fail.

■ It is said that § 30 requires foreign fire insurance corporations to pay the tax not alone on their net receipts from fire, marine and inland navigation insurance but also on their net receipts from casualty insurance, whereas foreign casualty insurance corporations severally conducting a casualty insurance business in direct competition with the foreign fire insurance corporations are not required to pay a tax on their net receipts or any equivalent tax. The factual premises of this claim are stipulated. The Supreme Court of the State has construed § 30 as taxing the foreign fire insurance companies on their net receipts from casualty insurance,[8] and has held that foreign casualty insurance companies conducting a casualty insurance business are not taxable on their net receits under § 30 or any other statute.[9] The stipulation shows that all of these foreign corporations are lawfully entitled by reason of licenses, etc., to conduct their respective businesses within the State; that the casualty corporations are conducting the "same character" of casualty insurance business as the fire insurance corporations; that these businesses are competitive; and that the casualty corporations are taxed on such real and tangible personal property as they hold within the State,

---

[8] *People* v. *Concordia Fire Ins. Co.*, 350 Ill. 365; 183 N.E. 241.

[9] *Fidelity & Casualty Co.* v. *Board of Review*, 264 Ill. 11; 105 N.E. 704.

while the fire insurance companies are taxed not only on their real and tangible personal property but also on their net receipts from casualty insurance.

This statement shows that § 30, as the state court construes and applies it, works a very real and prejudicial discrimination against the fire insurance companies and in favor of the casualty companies in respect of competitive casualty businesses of the same character, conducted in the same way and in the same territory. The companies are all foreign corporations, and all are for present purposes equally within the jurisdiction of the State and subject to her power to tax. There is no basis or reason for making a distinction between them that has any pertinence to the imposition of a property tax such as is in question. The net receipts which are taxed are not different from those which are not taxed; and both come from the same source. Such a discrimination in respect of the taxation of real or tangible personal property obviously would be essentially arbitrary. In principle it is not different with the net receipts. They are property and the tax which § 30 imposes is, as the state court holds, a property tax. It follows that the section, when construed and applied in the way just described, is in conflict with the equal protection clause of the Constitution. Full support for this conclusion is found in prior decisions.[10]

When the views expressed in this opinion are applied to the judgment under review the result, shortly stated, is as follows: The taxes of 1923–1926, as reduced by the Supreme Court, were only on net receipts from fire,

---

[10] *Quaker City Cab Co.* v. *Pennsylvania,* 277 U.S. 389; *Louisville Gas & Electric Co.* v. *Coleman,* 277 U.S. 32; *Cumberland Coal Co.* v. *Board of Revision,* 284 U.S. 23; *Iowa-Des Moines National Bank* v. *Bennett,* 284 U.S. 239; *Royster Guano Co.* v. *Virginia,* 253 U.S. 412; *Kentucky Finance Corp.* v. *Paramount Auto Exchange,* 262 U.S. 544; *Power Manufacturing Co.* v. *Saunders,* 274 U.S. 490.

marine and inland navigation insurance, and were computed on amounts obtained by proper scaling and debasement. None of the constitutional objections urged against the taxes of those years is well taken. Therefore as to those taxes the judgment must be affirmed. The tax of 1927 was partly on net receipts from casualty insurance and was also laid on the full amount of the net receipts of that year without first debasing them to 60% as was done with other property. In both of these particulars there was a denial of the equal protection of the laws. Therefore as to that tax the judgment must be reversed. And incidentally the cause must be remanded to the Supreme Court of the State for further proceedings not inconsistent with this opinion.

*Affirmed in part.*
*Reversed in part.*

The CHIEF JUSTICE took no part in the consideration or decision of this case.

MR. JUSTICE CARDOZO, dissenting in part.

I am unable to concur in the opinion of the court to the extent of its holding that the tax upon the net receipts of premiums for casualty insurance is a denial to the appellant of the equal protection of the laws.

The validity of a tax depends upon its nature, and not upon its name. *St. Louis Compress Co.* v. *Arkansas,* 260 U.S. 346, 348; *Federal Land Bank* v. *Crosland,* 261 U.S. 374, 378; *Louisville Gas Co.* v. *Coleman,* 277 U.S. 32, 38; *Educational Films Corp.* v. *Ward,* 282 U.S. 379, 387.

In the State of Illinois there has long been a usage, reinforced by statute until 1927, whereby property subject to an *ad valorem* tax is to be assessed at 30% or later 60% of its value, and no more. The highest court of that state held for many years that within the meaning of this rule of debasement, the tax upon the net receipts

of foreign fire and inland navigation companies was a tax upon property, or at least was to be assessed in the same way. *Chicago* v. *Phoenix Insurance Co.*, 126 Ill. 276; 18 N.E. 668; *National Fire Ins. Co.* v. *Hanberg,* 215 Ill. 378, 380; 74 N.E. 77; *People* v. *Cosmopolitan Fire Ins. Co.*, 246 Ill. 442, 448; 92 N.E. 922. This continued to be the practice till 1921. In that year and for a time afterwards, the Court determined that the tax did not come within the rule of debasement, but was a tax upon a privilege. *People* v. *Kent,* 300 Ill. 324; 133 N.E. 276; *People* v. *Barrett,* 309 Ill. 53; 139 N.E. 903; *Hanover Fire Ins. Co.* v. *Carr,* 317 Ill. 366; 148 N.E. 23. The companies affected by the new ruling attacked the discrimination as unconstitutional, and brought the controversy here. In 1926, this court held that the denial of the 30% debasement to foreign corporations brought about an inequality so gross in comparison with the burdens of domestic corporations as to vitiate the tax and the statute that imposed it. *Hanover Ins. Co.* v. *Harding,* 272 U.S. 494. Following that decision, the Supreme Court of Illinois receded from the position that it had taken in 1921, and held that there must be a debasement of value as in the case of taxes upon property. *Hanover Fire Ins. Co.* v. *Harding,* 327 Ill. 590, 601; 158 N.E. 849; *People* v. *Franklin National Ins. Co.,* 343 Ill. 336; 175 N.E. 431.

No descriptive epithet applied to the tax by the Illinois court or any other can transform the essential nature of the tax into something other than it is. *St. Louis Compress Co.* v. *Arkansas, supra; Federal Land Bank* v. *Crosland, supra; Educational Films Corp.* v. *Ward, supra.* No descriptive epithet can make a tax upon the net receipts of the business of the whole year the same as one upon the property located on a particular day of the year within the area of the taxing district, or the same as one upon the capital or income of investments. If the foreign corpo-

rations subjected to this tax on net receipts had taken the gross receipts out of the state at once after collection, or had placed them in an insolvent bank with the result that nothing remained when the assessment day arrived, the tax would still have been due without the abatement of a dollar. *Fidelity & Casualty Co.* v. *Board of Review*, 264 Ill. 11, 14; 105 N.E. 704. On the other hand, nothing would have been due if no premiums had been collected during the year, though the profits of earlier years were still within the county. The tax, whatever its label, is upon the operations of a business. Generally in the United States, though perhaps not abroad, a tax so imposed is spoken of as an excise. *Flint* v. *Stone Tracy Co.*, 220 U.S. 107, 145; cf. Encyclopaedia of the Social Sciences, vol. V, article " Excise "; Seligman, Essays in Taxation, 9th ed., pp. 161, 165, 169. It is what it is, no matter what one calls it. It is a tax on net receipts.

This court did not hold in *Hanover Ins. Co.* v. *Harding, supra,* that if the tax was an excise, it would be void for that reason, though the assessment were to be debased. All that was held was that calling it an excise would not save it if the benefit of debasement was withheld in a discriminatory way. By the same token, calling it a property tax does not condemn it if debasement is allowed. The Illinois court did not hold, in retracting the description of a tax upon a privilege, that a tax upon investments is identical with a tax upon the net receipts of the business of the year. Things so essentially different would not become the same even if a court were to confuse them and speak of them as one. The Illinois court held no more than this, that whatever the differences between the taxes, the two would be viewed as if they were taxes upon property for the purpose of applying the prescribed percentage of debasement. If the tax upon net receipts, including casualty insurance premiums, would not effect a denial of the equal protection of the laws in the event that the

Supreme Court of Illinois, while debasing the assessment, had described the tax as an excise, it does not effect such a denial because the court, rightly or wrongly, has described it as something else. *New York Cent. R. Co.* v. *Miller,* 202 U.S. 584, 596. The question still is, what kind of classification is permissible when the yearly net receipts are the subject matter of the tax and the measure of the burden?

Now, plainly, a tax on the net receipts of a business of a particular kind is not condemned as void for the reason that a like tax or an equal one is not laid on the net receipts of every other kind of business. *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U.S. 232, 237; *Pacific Express Co.* v. *Seibert,* 142 U.S. 339, 351, 353; *Adams Express Co.* v. *Ohio,* 165 U.S. 194, 223, 228; *Southwestern Oil Co.* v. *Texas,* 217 U.S. 114; *Oliver Iron Co.* v. *Lord,* 262 U.S. 172; *Stebbins* v. *Riley,* 268 U.S. 137, 142; *Ohio Oil Co.* v. *Conway,* 281 U.S. 146, 159; *Union Bank* v. *Phelps,* 288 U.S. 181. Not even the appellant makes any contention to the contrary. If it did, it would be driven to maintain that the whole statute must fall, and not merely so much as affects the casualty premiums. To say that a tax on the net receipts of one kind of business is void because a like tax is not laid on different forms of business would mean that the net receipts of insurance companies may not be taxed without laying a like tax on manufacturers and merchants. The cases above cited make it clear to the point of demonstration that this is not the law. " The state may tax real and personal property in a different manner." *Bell's Gap R. Co.* v. *Pennsylvania, supra; Ohio Oil Co.* v. *Conway, supra.* " It may impose different specific duties upon different trades and professions, and may vary the rate of excise upon different products." *Ibid.* Nowhere is it intimated that what was approved would have been condemned if there had been in the statute a glossary that gave the tax another name.

With the aid of this analysis the path is cleared to a conclusion. A tax upon the receipts of a business is not invalid as of course because some forms of business are hit and others are exempt. To bring about that result the assailant of the tax must be able to satisfy the court that the classification had its origin in nothing better than whim and fantasy a tyrannical exercise of arbitrary power. *Ohio Oil Co.* v. *Conway, supra,* p. 160; *Stebbins* v. *Riley, supra; Lindsley* v. *Natural Carbonic Gas Co.,* 220 U.S. 61, 78. This is the heavy burden that the appellant must sustain. Is it a whimsical and fantastic act to tax foreign fire insurance companies upon all their net receipts, including those derived from casualty premiums, when no such tax is imposed upon the receipts of insurance companies that do a casualty business only? If so, the arbitrary quality of the division must have its origin in the fact that the activities of the one class overlap to some extent the activities of the other. But plainly there is no rule that overlapping classes can never be established in the realm of taxation except at the price of an infringement of the federal constitution. The recognition of such a rule means that a department store may not be taxed on the net receipts of its business unless all the many activities thus brought under a single roof are taxed in the same way when separately conducted. Cf. *State Board of Tax Commissioners* v. *Jackson,* 283 U.S. 527; *Liggett Co.* v. *Lee,* 288 U.S. 517, 532. There must be a tax on the business of the draper, the jeweler, the shoemaker, the hatter, the carpet dealer, and what not. For the same reason, the proprietor of a retail market dealing in meats and groceries and vegetables and fruits will then escape, at least proportionately, a tax upon receipts if the statute does not cover the business of the shopkeeper who derives a modest income from the sale of peanuts and bananas. There are few taxes upon earnings that would pass so fine a sieve. The rule, if

there is any, against the creation of overlapping classes for purposes of taxation is manifestly not one of general validity. The range of its application must depend upon the facts.

Fire insurance companies in Illinois, though organized in other states, have never been allowed to do a general casualty business. It is misleading to argue about them on the assumption that they are appropriately described as casualty insurers. For a long time they were restricted to the risks of fire, lightning and tornadoes, and those of inland navigation and transportation. Act of March 11, 1869; Act of May 31, 1879; Act of June 30, 1885. Then in 1905 (Act of May 16, 1905), they were permitted to insure against the leakage of sprinklers, pumps, and other apparatus of that order. In 1912 (Act of June 11, 1912), the list was increased by adding the risk of damage to property through the use of motor vehicles, but not the risk of liability for damage to the person. In 1925 (Act of June 30, 1925), there was a revision of the form of the then existing statutes, but with little change of substance. After the revision just as formerly the casualty policies written by the fire companies were confined with negligible exceptions to liability for loss through the use of pumps and sprinklers, and liability for damage to property through the use of motor vehicles. They occupied only a small part of the total casualty business.

The accuracy of this statement is perceived upon a survey of the activities of the casualty companies. These companies insure against bodily injury, disability or death as a consequence of accident. They indemnify merchants and other business men against loss by reason of giving credit to customers. They guarantee against loss by burglary or theft or the breakage of glass. They insure against any hazard resulting from the maintenance or use of automobiles or other vehicles, whether there is

personal injury or death or only damage to property. Act of April 21, 1899 as amended by Act of January 30, 1919 and June 28, 1921.

A study of the reports to the Insurance Department of Illinois exposes the overlapping segments in their comparative dimensions. Thus, in 1927, the foreign fire stock-companies of Illinois received premiums from all sources of $68,741,901.34, of which $48,266,624.47 came from fire policies, $680,645.43 from ocean marine insurance, $4,018,503.22 from inland navigation and transportation, $7,866.42 from insurance against earthquakes, $5,743,891.81 from tornado policies, $171,833.15 from insurance against damage by hail, $327,933.61 from riot insurance, $48,414.68 from miscellaneous policies; and $9,476,188.55 from the two fields where the business of fire companies and casualty companies overlap, *i.e.*, motor vehicle property damage and sprinkler leakage ($9,207,-980.43 for the one and $268,208.12 for the other). 60th Annual Insurance Report, part I, pp. 96–105. During the same year the foreign casualty companies received premiums of $7,384,454.72 from accident and health policies, $12,728,070 from workmen's compensation insurance, $3,274,293.63 from fidelity insurance premiums, $7,879,541.48 from automobile liability insurance, exclusive of property damage, $3,047,350.53 from liability insurance not connected with automobiles, $3,957,757.69 from insurance against burglary and theft, $4,371,869.46 from surety bonds, $1,961,445.08 from plate glass insurance, $442,020.20 from steam boiler insurance, $161,-862.91 from engine and machinery insurance, $370,040.02 from credit insurance, $111,164.20 from property damage not connected with motor vehicles, $22,676.10 from insurance of live stock, $794,119.43 from miscellaneous policies, and finally $3,199,397.92 from motor vehicle policies covering damage to property and $44,267.48 from sprink-

ler damage insurance. The total premiums from all sources were $50,679,141.98. 60th Annual Insurance Report, part III, pp. 79–92.

This comparison makes it clear that the business of fire insurance companies as carried on in Illinois is essentially a different one from the business generally known as that of casualty insurance, though the spheres coincide for the space of a small segment. A phase or department of one business may be akin to a phase or department of another, and still the kindred branches may bear unequal taxes. Coincidence of some of the parts is not enough unless the parts are so many as to determine the identity of the whole. The vice of any different principle may be known from its consequences. The drug store of today supplies many things besides medicines and surgical appliances. It has a counter where sandwiches and salads and ice cream and many other edibles are furnished to its customers. If a tax were to be laid upon the earnings of a drug store, the acceptance of the appellant's argument would drive us to a holding that the receipts from the sale of edibles must be excluded from the reckoning in the absence of a like tax upon the proprietors of restaurants. Dealers of ready made clothing have a department of their business in which clothes are made to order. The appellant would have us say that the earnings from that department are exempt under the constitution from a tax upon receipts unless a like tax is laid upon the earnings of the merchant tailor. The legislature in that view may no longer classify the forms of business with an eye to a composite group of uniformities and differences. There must be a segregation of forms of business into their constituent activities, which, to the extent that there is identity, must be taxed for any one group as they are taxed for any other. Immunity from tax laws of unequal operation has never

until now been pressed to that extreme. *Armour & Co.* v. *Virginia,* 246 U.S. 1, 6; *Armour Packing Co.* v. *Lacy,* 200 U.S. 226; *Quong Wing* v. *Kirkendall,* 223 U.S. 59; *American Sugar Refining Co.* v. *Louisiana,* 179 U.S. 89; *Pacific Express Co.* v. *Seibert, supra; State Board of Tax Commissioners* v. *Jackson, supra; N.Y. ex rel. N.Y. & Albany Lighterage Co.* v. *Lynch,* 288 U.S. 590; *Puget Sound Power & Light Co.* v. *Seattle,* 291 U.S. 619; *A. Magnano, Co.* v. *Hamilton, ante,* p. 40.

By the very law of their being, companies whose principal business is to provide insurance against fire, but who provide casualty insurance in a very narrow field, are in a class of their own, with capacities and opportunities essentially diverse from those of companies who are incompetent to provide insurance against fire, but who do insure against almost every other imaginable risk. The state is not called upon to explain the reasons for taxing the members of the one class more heavily than it does the members of the other. The burden is on the appellant who would strike the statute down, and not on the state which invokes the presumption of validity. *Weaver* v. *Palmer Bros. Co.,* 270 U.S. 402, 410; *Detroit Bridge Co.* v. *Tax Board,* 287 U.S. 295, 297. "As underlying questions of fact may condition the constitutionality of legislation of this character, the presumption of constitutionality must prevail in the absence of some factual foundation of record for overthrowing the statute." *O'Gorman & Young, Inc.* v. *Hartford Fire Insurance Co.,* 282 U.S. 251, 257; *Lawrence* v. *State Tax Commission,* 286 U.S. 276, 283; *Williams* v. *Mayor,* 289 U.S. 36, 42. Here the foundation fails, and with it the assault.

Nothing that was determined in *Quaker City Cab Co.* v. *Pennsylvania,* 277 U.S. 389, is at war with this conclusion. There the business done by the taxpayer was the same as that done by others to whom an exemption was allowed. Here they are not the same, though at places they overlap.

For many years the fire insurance companies in Illinois were without power to write a policy unless the hazards were those of fire or of inland navigation. When the power was conferred upon them to cover risks of other kinds, a statute gave them notice that they must pay taxes to the county upon the net earnings of their business from whatever source derived. They were free to use the new privilege or to reject it as they pleased. They accepted it *cum onere* if they accepted it at all.

MR. JUSTICE BRANDEIS and MR. JUSTICE STONE join in this opinion.