UNITED STATES, Appellant,

v.

Evelyn LOWERY, Bernard S. Yancey,
a/k/a Bernard Sterling Gaskins, and
Lamana Lowery, Appellees.

No. 12895.

District of Columbia Court of Appeals.

Argued Dec. 13, 1977.

Decided Dec. 16, 1977.

David G. Hetzel, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Henry F. Greene, and Richard L. Caplan, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellant.

Christopher G. Hoge, Washington, D. C., for Evelyn Lowery.

Lynn Perkins-Brown, Washington, D. C., for Bernard Yancey.

Joel H. Skirble, Washington, D. C., for Lamana Lowery.

Before NEBEKER, YEAGLEY and FERREN, Associate Judges.

PER CURIAM:

Appellees were each charged with having violated the Dangerous Drug Act, D.C.Code 1973, § 33–702(a)(4), and the cases were consolidated for trial. They come before us on an expedited "midtrial" appeal by the government under D.C.Code 1973, § 23–104(d),[1] as a result of the trial court's ruling that the pertinent regulation adopted by the City Council, No. 74–49, which identi-

fied additional dangerous drugs pursuant to the authority delegated by Congress in D.C. Code 1973, § 33–701(1)(C), "is defective and cannot be used in support of the prosecution in this matter."

The threshold question we have to resolve is whether in its present posture the ruling is appealable under the statute as a "ruling made during the trial," or a nonappealable pretrial ruling. The trial court has found that the trial had begun; and appropriate deference to that factual determination, in view of this particular record, leaves us unable to hold that ruling plainly wrong or without evidence to support it. D.C.Code 1973, § 17–305(a).

The parties have advanced substantial arguments on each side of this issue. The record reflects that on the first day, December 8, 1977, the appellees' waivers of a jury trial were agreed to by the government and accepted by the court. The government served release offender papers on two appellees pursuant to D.C.Code 1973, § 23–1328. After the court determined that the possibility of enhanced penalties did not change the desire of any appellee to be tried without a jury, it was announced: "We will proceed. Any other preliminary matters."

The prosecutor then asked, since there was no stipulation that "phencyclidine is a drug described by the City Council of the District of Columbia pursuant to the Dangerous Drug Act," that Regulation No. 74–49 be marked for identification as government exhibit # 1. Then counsel for appellees asked whether "this trial is opened, if jeopardy has attached"; the court said it regarded it as still a discussion of preliminary matters. Upon request by counsel, a rule on witnesses was then granted. When, shortly thereafter, the government asked the court to take judicial notice of Regulation No. 74–49, the court stated: "I would think that once I start taking judicial notice

---

1. D.C.Code 1973, § 23–104(d) provides in part as follows:

    The United States or the District of Columbia may appeal any other ruling made during the trial of a person charged with an offense which the United States Attorney or the Cor-

poration Counsel certifies as involving a substantial and recurring question of law which requires appellate resolution. Such an appeal may be taken only during the trial and only with leave of the court.

that jeopardy would attach" and later that "if it is to be considered substantive evidence, that's beginning the introduction of evidence." The court then announced it had taken judicial notice of the document, and it was in evidence. The government also asked the court to take judicial notice of the entire contents of the Superior Court file in the case of *United States v. Holmes*, Super. Ct. Cr. No. 15037–76, and the court acceded to the request. Among these documents were the following:

Notice of a public hearing for classification of dangerous drugs under D.C. Code 1973, §§ 33–701 to –712, dated October 31, 1974;

Notice of October 22, 1974, of the Council's intent to consider certain drugs as dangerous;

Report of the Chairman of Health, Welfare & Aging Committee of the District of Columbia Council, December 3, 1974, regarding the proposed regulation and the findings of the committee;

Memorandum of the same committee chairman regarding its findings and moving the passage of the regulation; and

The opinion and order of Judge Norman in *United States v. Holmes, supra.*

The court then ruled that the Council regulation was invalid. The court's reasoning was that the Council found merely that phencyclidine was a "dangerous drug[] within the meaning of [§ 33–701(1)(C)]," whereas D.C.Code 1973, § 33–701(1)(C), mandates that the Council find the drug to be "habit-forming, excessively stimulating

or to have a dangerously toxic, or hypnotic or somnifacient effect on the body of a human or animal . . . ." The trial judge's construction of the statute was that the Council was required to identify the dangerous characteristic of each proscribed drug.

▇ The trial court accepted the government's proffer of the exhibits and records as evidence in the government's case against appellees. That this evidence may have been irrelevant to the government's case-in-chief is not determinative of whether trial had begun. *See Blondes v. State*, 273 Md. 435, 330 A.2d 169 (1975). Rather, the trial judge's acceptance of the proffered material as evidence was within his province, and the trial judge's conclusion that trial had begun was based solely upon the factual determination that the materials had been proffered as evidence. We cannot, on the record, say that the trial judge's determination was plainly wrong or without evidence to support it. D.C.Code 1973, § 17–305(a).[2]

▇ The second issue is whether Regulation No. 74–49 is valid.[3] We begin with the proposition that there attaches to every legislative enactment a presumption of validity, and the burden weighs heavily on a party who seeks to overturn it. *See Panitz v. Comptroller of Treasury*, 247 Md. 501, 232 A.2d 891 (1967). *See also United States v. Watson*, 423 U.S. 411, 416, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *United States v. National Dairy Products Corp.*, 372 U.S. 29,

---

**2.** It does appear that the judicial notice taken was pertinent to the general issue of whether or not the defendants could be found guilty of possession of a dangerous drug as defined in D.C.Code 1973, § 33–701(1)(C). This supports the trial court's conclusion that trial had commenced.

**3.** Regulation No. 74–49, which was signed into law on December 27, 1974, provides as follows:
*Section 1. Title 8, Chapter 2* of the District of Columbia Health Regulation is amended to read:
"*8–2.431* Additional Drugs Included in the Dangerous Drug Act
The District of Columbia Council, having held a public hearing on the question of whether certain drugs may be considered

'dangerous drugs' for the purposes of paragraph (1) of Section 202 of the Dangerous Drug Act for the District of Columbia (70 Stat. 612; D.C.Code Sec. 33–701(1)(C), does hereby find and declare that within the meaning of such section of the Act and the regulations adopted pursuant to the authority contained therein, the term 'dangerous drug' shall include the following drugs:
Methaqualone
Phencyclidine (Angel Dust)
Methyphenidate (Ritalin)
Phenmetrazine (Preludin)
Lysergic Acid Diethylamide (LSD)"
*Section 2.* This regulation shall take effect immediately upon enactment.

32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *Concordia Fire Ins. Co. v. Illinois*, 292 U.S. 535, 547, 54 S.Ct. 830, 78 L.Ed. 1411 (1934); *State v. Sutton*, 27 Ariz.App. 134, 551 P.2d 583 (1976).

The only defect found by the trial court was the failure of the Council to specify which of the properties enumerated in D.C. Code 1973, § 33–701(1)(C), are possessed by the drugs proscribed by the regulation. The Council, however, through the Health, Welfare & Aging Committee, did hold a public hearing on October 31, 1974, to determine whether those drugs should be considered dangerous within the meaning of the Dangerous Drug Act. That Committee, after hearing expert testimony, reported that it had found that each of the drugs at issue, including phencyclidine, had at least one of the characteristics which would qualify it as dangerous under the statute.[4]

■■■■ The Council specifically found that the drug here in issue was a "dangerous drug[] within the meaning of the Act." This reference necessarily incorporated the specific attributes of dangerousness enumerated in that Act. *See Engel v. Davenport*, 271 U.S. 33, 38, 46 S.Ct. 410, 70 L.Ed. 813 (1926). Moreover, the minutes of the Council proceeding on December 17, 1974, when the regulation was adopted, specifi-

cally incorporated the Committee report. As Judge Norman concluded in *Holmes v. United States, supra*, these Council actions justify a holding that the regulation is valid.[5] We do not read § 33–701(1)(C) as requiring that more be done by the Council than it did.

The ruling is

*Reversed.*

---

**4.** Report of the Chairman, Health, Welfare & Aging Committee of the District of Columbia Council, December 3, 1974:

> At the request of the Mayor-Commissioner and supported by the United States Attorney's office and District officials concerned with drug abuse; the hearing testimony presented by experts in the field of medicine, medical research, police work, etc., revealed that *each* of the above mentioned drugs had *one or more* of the characteristics which would qualify it for inclusion as a "dangerous drug" within the meaning of D.C.Code, Section 33–701(1)(C). It was further found that *each* of these drugs [is] habit forming, excessively stimulating, dangerously toxic, hypnotic *or* somnificent [sic] in its effect on the human body. Some of these drugs share a number of these characteristics. [Emphasis added.]

**5.** The trial judge's conclusion that the regulation did not comply facially with the mandates of the statute led him further to conclude that the regulation was void for vagueness in that it failed to specify the dangerous effects of the

proscribed drugs. In order to withstand a vagueness challenge, a statute must simply provide "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *United States v. Petrillo*, 332 U.S. 1, 8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 (1947). Reasonable "certainty" and "[f]air notice to those of ordinary intelligence" must appear. *Ricks v. District of Columbia*, 134 U.S.App.D.C. 201, 205–06, 414 F.2d 1097, 1101–02 (1968); *see Hicks v. District of Columbia*, D.C.App., 197 A.2d 154 (1964).

The conduct made criminal in these cases is possession of the specified drug. The statute, as implemented by the regulation, clearly and unequivocally proscribes possession, and thus gives fair and specific notice of what behavior is culpable. Vagueness doctrine does not require an individual be apprised of the rationales for enactment of a criminal statute—or, more specifically in these circumstances, it does not mandate that the effects which prompted the decision to criminalize possession of phencyclidine be stated in the statute with particularity.